[Civ. No. 64645. Second Dist., Div. Three. Feb. 14, 1983.]

GOOD SHEPHERD LUTHERAN HOME OF THE WEST, INC.,
Plaintiff and Appellant v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Sikora & Price and Steven C. Crooke for Plaintiff and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Edmond B. Mamer and Richard E. Nielson, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**LUI, Acting P. J.—**

### SUMMARY OF APPEAL

The question presented by appellant in this appeal is whether a charitable organization is exempt from the sales tax (Rev. & Tax. Code, § 6051)[1] if such organization fails to receive the "welfare exemption" from property taxation provided by section 214[2] with respect to the retail location from which the charitable organization's sales are made. The Board of Equalization of the State of California (Board) contends that the receipt of such an exemption is required in order for the charitable organization to be exempt from sales tax pursuant to section 6375[3] and administrative regulations promulgated by the Board inter-

---

[1]Hereinafter, all references shall be to the Revenue and Taxation Code unless otherwise indicated.

[2]Section 214 provides in pertinent part as follows: "Property used exclusively for . . . charitable purposes owned and operated by . . . corporations organized and operated for . . . charitable purposes is exempt from taxation if: . . . [¶] (2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual; [¶] (3) The property is used for the actual operation of the exempt activity, and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose; [¶] (4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the distribution of profits, payment of excessive charges or compensations or the more advantageous pursuit of their business or profession; [¶] (5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where such use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose; [¶] (6) The property is irrevocably dedicated to . . . charitable, . . . purposes and upon the liquidation, dissolution or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation or corporation organized and operated for religious, hospital, scientific, or charitable purposes; . . ."

[3]Section 6375 provides as follows: "There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this State of, tangible personal property made, prepared, assembled or manufactured by organizations formed and operated for charitable purposes qualifying for the exemption provided by Section 214 of the Revenue and Taxation Code known as the 'welfare exemption,' which are engaged in the relief of poverty and distress, and make the sales as a matter of assistance to the purchasers."

preting said section. We find that the appellant has not met its burden in showing that the sales in question were made "as a matter of assistance to the purchasers" as required by section 6375, and on that basis affirm the judgment entered below.

### STATEMENT OF FACTS[4] AND PROCEEDINGS BELOW

Appellant Good Shepherd Lutheran Home of the West, Inc., a California nonprofit corporation, and Long Beach Retarded Children's Foundation, a California nonprofit corporation, filed an action in the superior court on April 14, 1980, to recover sales tax, interest and penalties paid under protest pursuant to section 6933. Only appellant Good Shepherd Lutheran Home of the West, Inc., appeals from the judgment entered in favor of respondent Board.

Appellant was incorporated in the State of California in 1952 as a nonprofit California corporation. It offers residential care and training for individuals who are mentally retarded in seven homes located in California, Oregon, and Colorado. It has received determination letters from the Franchise Tax Board and the Internal Revenue Service indicating that it is an exempt organization which qualifies for exemption from state and federal income taxes.

Appellant operates several thrift stores under the name "Value Village," two of which were located in Santa Ana and Anaheim, Orange County, California. In 1973, appellant commenced operating these two thrift stores with the Orange County Association for Retarded Children, Inc. (hereinafter referred to as OCARC) which then owned the fixtures, furniture and equipment at the stores. In September 1973, OCARC sold their interest in the physical assets of the stores to appellant. In late 1974, OCARC transferred the operation and management of the two stores to appellant under an exclusive license agreement for ten years in exchange for appellant's agreement to pay to OCARC a percentage of the profits from the stores.

Value Village stores located through California collect clothing and other items donated to appellant. These items are prepared, cleaned, repaired and reconditioned prior to their sale to the general public. The donations of goods are received through door-to-door solicitations, strategically located drop boxes

---

[4]The statement of facts is taken from "STIPULATION TO AGREED FACTS" signed by the parties to this appeal and filed with the court below. Such stipulation included an agreement that the trial court could determine the action without a jury based upon the pleadings, records and papers filed in this action and upon such additional evidence offered. The statement of intended decision is reflected in a minute order dated June 4, 1981, which indicated that the parties' pleadings, the stipulation, and the trial briefs were the evidence considered by the court in making its intended decision and subsequent judgment.

from which collections are made periodically, and special offers of contributions that are developed from a public relations program. Most of the goods are collected by appellant's trucks and transported to the stores. Funds obtained through sales at the Value Village thrift stores are paid to OCARC under a licensing agreement and are used to maintain and operate appellant's facilities, pay the monthly fee of the home for the mentally retarded residents unable to do so, and pay the salaries of the personnel employed by appellant. The funds are also used to purchase various equipment and furniture used in the homes and various workshops operated by appellant.

Sometime in 1975, the exact date of which is not stated in the stipulation of facts, appellant filed a claim for a welfare exemption with the Assessor for the County of Orange to exempt the personal property of appellant's two thrift stores in Santa Ana and Anaheim from property tax. The Board's initial findings, dated April 22, 1975, determined that the requirements of the welfare exemption had been met and that the personal property was eligible for the exemption. However, the Board issued amended findings dated May 6, 1975, which findings determined that appellant had failed to meet the requirements for the exemption; the claims for the welfare exemption were denied. The reasons for the denial were set forth in the Board's letter to the executive director of appellant, dated July 10, 1975. Said letter indicated that the Board's May 8, 1968, resolution set forth three conditions under which the Board had previously found certain thrift shops to be eligible for the welfare exemption which were as follows: "1. The thrift shop sells property which has been processed in some manner by handicapped persons who are being rehabilitated by a rehabilitation program conducted by the claimant, or [¶] 2. The persons being rehabilitated are employed in the operation of the thrift shop, and [¶] 3. If there is a management contract, the contract may provide remuneration to the manager on the basis of a reasonable percentage of the gross sales, provided that there is a maximum dollar amount of salary and that such amount is reasonable; or the remuneration may be on the basis of a reasonable percentage of the net earnings." Said letter concluded that appellant was ineligible for the welfare exemption because, among other things, appellant would be contracting with the workshop for the training of those persons being rehabilitated rather than operating the workshop itself and thus not meet condition 1; that no persons being rehabilitated would be employed in the operation of the stores and thus appellant did not comply with condition 2; and the licensing agreement between appellant and OCARC was in the nature of fund-raising activities and thus not charitable and exempt activities. The Board also relied on the Supreme Court's decision in *Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045].[5] The Board additionally con-

[5]A portion of the *Cedars of Lebanon Hosp.* decision, *supra,* 35 Cal.2d 729, dealt with exemption from property tax of a thrift shop operated for the sale of donated clothing in a hospital. The

cluded that appellant's plan to raise funds from its operation of the thrift stores and then distribute portions of said funds to OCARC provided a further ground for denial of the welfare exemption.

Based on the findings of the Board, the county assessor denied the welfare exemption for appellant's Santa Ana and Anaheim Value Village stores' personal property.

Appellant sought to meet the administrative conditions established in said July 10, 1975, letter by employing one mentally retarded individual in the Santa Ana thrift store during the calendar year of 1976 and one during the calendar year 1977. Findings were again made by the Board dated April 26, 1976, that appellant continued to be ineligible for the welfare exemption. The reasons for said denial were set forth in the Board's letter dated September 14, 1976. In summary, the September 14, 1976, letter concluded that the agreement between OCARC and appellant constituted division of profits and was in the nature of fund-raising activities and not charitable activities. Also, the Board cited the fact that no persons being rehabilitated were employed in the operation of the thrift stores on the tax lien date although one handicapped person was apparently working at the Santa Ana shop during some of the period in question. Furthermore, there was an indication that appellant merely contracted with OCARC for workshop training programs rather than operating its own workshops and that the management contract between appellant and W.D. Management did not meet the requirements set forth in the July 10, 1975, letter regarding reasonable compensation. The Board concluded that the properties were not used exclusively for the actual operation of an exempt activity on the lien date. Based upon the Board's September 14, 1976, findings, the county assessor denied the welfare exemption claim for the personal property located at the two stores.

---

thrift shop was located on the lower floor of the hospital building where donated clothing and furnishings were sold and the entire proceeds were devoted to the maintenance of the free children's clinic and maintained jointly by the hospital and a Community Chest agency deemed by the hospital's board of directors to be a charitable use. The court stated, "[b]ut such enterprise, laudable as its purpose manifests it to be, cannot escape classification as an independent undertaking to raise revenue, and it cannot be said to have been incidental to and reasonably necessary for the accomplishment of hospital purposes. In truth it was conducted solely for revenue purposes as distinguished from hospital purposes. While the profit or gain derived from the operation of the thrift shop benefited the hospital in providing support for its clinic, such consideration must be viewed in the light of the welfare exemption law's express proviso that 'property used exclusively . . . for hospital . . . or charitable purposes is exempt from taxation if . . . the property is not used or operated by the owner or by any other person for *profit* regardless of the purposes to which the profit is devoted.' (Rev. & Tax. Code, § 214, subd. (3); emphasis added.) Such plain language prohibits the allowance of the exemption claim here in question." (*Id.*, at p. 745-746.)

Appellant apparently never contested the assessment of the property tax based on the denial of the welfare exemption. Counsel for the Board speculated during oral argument that appellant's failure to pursue an administrative appeal and then a refund suit as to the assessment of property taxes was related to the fact that the tax on the personal property was relatively insignificant in amount, presumably due to the small amount of personal property at these two locations on the lien date. It is the Board's position that the qualification for the welfare exemption from property taxation is a prerequisite for the sales tax exemption for the sales location in question pursuant to section 6375.

On or about November 30, 1976, and September 21, 1977, the Board conducted sales tax audits of appellant's records respecting its Anaheim and Santa Ana Value Village stores and sent notices of determination dated November 30, 1976, setting forth deficiencies in sales taxes, including interest and penalties, for the Anaheim store for the period July 1, 1973, and ending December 31, 1975; and for the Santa Ana store for the period December 1, 1973, and ending December 31, 1976.

Appellant filed petitions for redetermination with the Board concerning the above three notices of determination. Subsequently, in March 1978, the Board issued notices of redetermination which did not change the amounts payable and set forth a total tax, interest, and penalty due in the amount of $66,866.48. In April 1978, appellant paid such assessments of sales tax, interest, and penalties under protest. On October 27, 1978, appellant filed a claim for refund with the Board as to all assessments. On January 16, 1980, the Board sent appellant a notice of denial of claim for refund. Appellant filed its complaint to recover the taxes, interest and penalties paid under protest on April 14, 1980, pursuant to section 6933.

The action was tried to the court without a jury pursuant to a stipulation of facts, pleadings, and trial briefs of the parties. Following submission of the matter, the trial court issued its intended decision determining that section 6375 should be construed to require the receipt of the "welfare exemption" described in section 214. The court determined that appellant had failed to comply with the procedure in obtaining such welfare exemption pursuant to section 254.5 and therefore was precluded from seeking a refund of the taxes, interest and penalties in question. Based on this determination, the court did not consider the remaining issues raised by appellant. A judgment was entered accordingly on July 2, 1981. Appellant filed a timely notice of appeal.

## DISCUSSION

At the outset, we note that we are faced with a rather confusing statutory scheme which results from the fact that the welfare exemption was originally

enacted to provide property tax exemptions and not sales tax exemptions and the further fact that the legislation implementing the sales tax exemption in section 6375 is wholly lacking in specificity and direction.

The "welfare exemption" was originally enacted in section 214 to permit an exemption from property tax for property used for religious, hospital, scientific or charitable purposes. Section 254.5[6] sets forth a specific procedure for applying for such exemption. The application, in the form of an affidavit, is filed on or before March 15 of each year with the county assessor in the county where such property is located. The assessor refers the matter to the Board along with his recommendations for approval or denial. The Board conducts an independent evaluation with or without a hearing and returns the matter to the assessor with a finding of eligibility or ineligibility. The assessor may deny the exemption to an organization the board finds eligible but may not grant an exemption to an organization the Board finds ineligible. Section 260 specifically states, "[i]f any person, claiming any exemption named in this article [§§ 251-279], fails to follow the required procedure, the exemption is waived by the person."

█ The Board argues that appellant failed to pursue its administrative remedies prior to filing suit for refund of the sales taxes, interest and penalties in question.[7] Specifically, the Board contends that appellant's failure to pursue

---

[6]Section 254.5 provides that "[a]ffidavits for the welfare exemption . . . shall be filed in duplicate on or before March 15 of each year with the assessor concerned and shall be accompanied by duplicate certified copies of the financial statements of the owner and operator. Copies of the affidavits and financial statements shall be forwarded not later than April 1 by the assessor with his recommendations for approval or denial to the board which shall review all such affidavits and statements and may institute an independent audit or verification of the operations of the owner and operator to ascertain whether both the owner and operator meet the requirements of Section 214 of the Revenue and Taxation Code. In this connection the board shall consider, among other matters, whether: [¶] (a) The services and expenses of the owner or operator (including salaries) are excessive, based upon like services and salaries in comparable public institutions; [¶] (b) The operations of the owner or operator, either directly or indirectly, materially enhance the private gain of any individual or individuals; [¶] (c) Any capital investment of the owner or operator for expansion of physical plant is justified by the contemplated return thereon, and required to serve the interests of the community. [¶] (d) The property on which exemption is claimed is used for the actual operation of an exempt activity and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose. [¶] The board shall make a finding as to the eligibility of each applicant and the applicant's property and shall forward its finding to the assessor concerned not later than June 1. In a case where the board conducts a hearing with respect to the eligibility of the applicant and the applicant's property, the time for making the finding and forwarding it to the assessor concerned is extended to no later than June 15. The assessor may deny the claim of an applicant the board finds eligible but may not grant the claim of an applicant the board finds ineligible."

[7]As stated in *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966]: "Ordinarily a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. [Citations.] An exception is made when the assessment is a nullity as a matter of law because, for example, the property is tax exempt, nonexistent or outside the jurisdiction [citations], and no factual questions exist regarding the valuation of the property which, upon review by the board of

the denial of its welfare exemption on its *property taxes* administratively and its failure to file suit for refund on such *property taxes* is fatal to appellant's suit for refund of *sales taxes.* The essence of this argument is that a receipt of a welfare exemption from *property taxes* (or at least a denial of such an exemption and then an exhaustion of administrative remedies related thereto) is a prerequisite to a qualification for an exemption from *sales taxes* on the retail locations in question, citing section 6375 and regulation 1570.[8]

The Board's contention is subject to at least one major defect. A charitable organization can operate a thrift store without any taxable personal property at the sale location because it may either borrow or lease any necessary property such as furniture or fixtures necessary to conduct its sales operations and further because section 219 (subsequent to the fiscal years 1980-1981), exempts business inventories from property taxation. Thus, there would be *no* taxable property on which such an organization could claim a property tax welfare exemption under section 214. This point is particularly appropriate in the present appeal where it appears that the appellant's personal property was de minimus in amount at the two subject locations. Thus, we conclude that appellant is not

---

equalization, might be resolved in the taxpayer's favor, thereby making further litigation unnecessary [citations]."

[8]Regulation 1570 (Cal. Admin. Code, tit. 18, § 1570), states in pertinent part as follows: "(a) Sales by charitable organizations are exempt from the sales tax, and the purchaser is exempt from the use tax provided all of the following conditions are present: [¶] (1) The organization must be formed and operated for charitable purposes, and must qualify for the 'welfare exemption' from property taxation provided by Section 214 of the Revenue and Taxation Code. [¶] (2) The organization must be engaged in the relief of poverty and distress. [¶] (3) The organization's sales must be made principally as a matter of assistance to purchasers in distressed financial condition. [¶] (4) The property sold must have been made, prepared, assembled or manufactured by the organization. [¶] The welfare exemption referred to in condition (1) is available to property owned and operated by a charitable organization under certain conditions. Among them is the requirement that the property be used in the actual operation of a charitable activity. Property used merely to raise funds is not used in a charitable activity even though the funds will be devoted to a charitable purpose. An example of a retail location being engaged in a charitable activity is a store employing handicapped persons as store personnel which devotes its profits to the store operation and an associated closed workshop for the handicapped. [¶] *In order to receive the sales tax exemption it is necessary for the organization to receive the welfare exemption on the retail location for which the seller's permit is held.* The welfare exemption must be claimed annually by March 15 with the county assessor on forms he provides for this purpose. If the organization does not own the store premises, it must receive the welfare exemption on its personal property, i.e., inventory, furnishings, and fixtures. [¶] *Conditions (2) and (3) are fulfilled if the primary purpose of the organization is to relieve poverty and distress and to aid purchasers by selling its property at reduced prices so as to be of real assistance to the purchasers.* Incidental sales to persons other than indigents will not preclude the organization from receiving the benefits of Section 6375. [¶] Condition (4) is fulfilled when the property is picked up at various locations and brought together (assembled) at one or more locations for purposes of sale, even though nothing further remains to be done to the property to place it in saleable condition. Property is deemed 'prepared' when it is made ready for sale by such processes as cleaning, repairing, or reconditioning." (Italics added.)

barred from an appeal of its sales tax assessment for failure to exhaust its administrative remedies as to its property tax welfare exemption.[9]

■ Since the case was submitted to the trial court on a stipulation of the facts with documents and because there was no conflict in the evidence, nor oral evidence presented, we may resolve the merits of appellant's qualification for the *sales tax exemption* in this appeal pursuant to section 6375 as a question of law rather than fact. (See *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249].)

■ Appellant had the burden of showing to the trial court that it clearly came within the terms of a statutory exemption from taxation. (See *Nat. Charity League, Inc.* v. *County of L. A.* (1958) 164 Cal.App.2d 241, 246 [330 P.2d 666].) Appellant simply did not meet its burden. Section 6375 provides for a sales tax exemption if tangible personal property was "made, prepared, assembled or manufactured by organizations formed and operated for charitable purposes qualifying for the exemption provided by Section 214 . . . [welfare exemption], which are engaged in the relief of poverty and distress, and make the sales as a matter of assistance to the purchaser." The relevant factual issue in dispute is whether or not the appellant's sales were made as assistance to the purchasers. The only stipulation of fact presented to the trial court was that the sales were made "to the general public." Appellant provided no facts which would indicate that the goods were sold at a lower price than sales of comparable products by retailers not entitled to the welfare exemption. If sales were made for assistance to the purchasers, they presumably would have been made at a discounted price so that such goods would be more affordable to distressed or needy purchasers.[10] The record is completely devoid of any indication as to the prices at which appellant sold such goods. Thus, based on our examination of the record on appeal, appellant has failed to meet its burden of establishing that it was entitled to the welfare exemption from sales taxes pursuant to section 6375.

In our view, legislation is necessary to clarify the confused state of the statutes. This confusion has resulted from the fact that the sales tax law included in the Revenue and Taxation Code does not contain specific requirements for and procedures to obtain a welfare exemption from *sales tax* but instead borrows language from the property tax law included in the same code; the statutes

---

[9]We would reach the same result whether or not a charitable organization has any personal property subject to property taxation. To hold differently would unfairly discriminate between charitable organizations solely on the basis of the property it owns.

[10]The Board's regulation 1570 interprets section 6375 by requiring such sales be made at. "reduced prices so as to be of real assistance to the purchasers." (See fn. 8, *ante.*)

pertaining to the property tax do not lend themselves to easy or clear integration or incorporation in the sales tax law. We invite the Legislature to cure this situation. We recognize that our Supreme Court in *Cedars of Lebanon, supra,* 35 Cal.2d 729, held that the raising of funds for charitable purposes in itself does not qualify such a charitable organization's property for a welfare exemption from property taxation. But, under the present statutes and the Board's regulations, a thrift store operating in an affluent location for which the Board has approved a welfare exemption from property tax may in fact be selling its goods at inflated prices primarily to affluent purchasers to maximize its fund-raising activities. Under these circumstances, such a thrift store should not qualify for the exemption from sales taxation under section 6375 because its customers are not distressed purchasers. If the intent of section 6375 is to be carried out, the location and operating policy of thrift stores should be to make goods available at locations and prices which would be of assistance to the purchasers.

Because of our resolution of the merits of appellant's appeal, it is unnecessary for us to resolve the appellant's remaining contentions which primarily attack regulation 1570 as being an unreasonable and improper interpretation of the statutes, specifically section 6375.

For the reasons stated above, we affirm the judgment of the trial court entered below.

Potter, J., and Danielson, J., concurred.