[No. A023850. First Dist., Div. Five. May 3, 1985.]

CAMPBELL INDUSTRIES, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Hanson, Bridgett, Marcus, Vlahos & Stromberg, Robert L. Rusky, Michael A. Duncheon and Winslow Christian for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Calvin J. Abe, Deputy Attorney General, for Defendant and Respondent.

OPINION

HANING, J.—Plaintiff/appellant Campbell Industries appeals from a summary judgment in favor of defendant/respondent State Board of Equalization (Board), in Campbell's action for recovery of $662,187 in sales taxes it paid under protest on the sale of three ferry boats to the Golden Gate Bridge Highway and Transportation District. Campbell claimed the taxes were improperly assessed because the sale fell within the provisions of Revenue and Taxation Code section 6368.[1] This statute provides an exemption from sales tax for sales of watercraft used in "interstate or foreign commerce involving the transportation of property or persons for hire." The superior court ruled that in order to qualify for this claimed exemption, Campbell was required to prove that the *principal use* of the ferry boats was transportation of interstate passengers. Since the record establishes without contradiction that the ferry boats are primarily engaged in local or *intrastate* activities, we conclude summary judgment was proper.

Campbell manufactured and sold three ferry boats to the Golden Gate Bridge Highway and Transportation District during 1976-1977, to be used for passenger service between Marin County and San Francisco, California. The Board assessed a sales tax against Campbell on the sale of these ferries in the amount of $662,187. Campbell paid the taxes under protest and then brought a timely action for refund. (See Rev. & Tax. Code, § 6933.)

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

In this refund action, the Board has consistently taken the position that the sale here under consideration was not exempt from taxation under section 6368 because the transportation of interstate passengers was not the principal use of the ferries. Based on a four-day passenger survey conducted by the Board, it was determined that of the 4,891 passengers responding to the survey, 21 passengers were utilizing the ferry service as an integral part of interstate travel into or out of the State of California. These survey results demonstrate that on less than one-half of 1 percent of the voyages during the survey period, the ferry boats transported at least one interstate passenger. The Board contends that in order to establish the sales tax exemption under section 6368, Campbell must demonstrate that the transportation of interstate passengers was the principal use of the ferry boats. To establish an exemption under the "principal use" standard as defined by administrative regulations, Campbell must show that at least one interstate passenger travelled on at least 50 percent of the ferries' voyages. (See Sales Tax Counsel Ruling, 600.0240 (1951).) Judged by the "principal use" standard, Campbell is clearly liable for the tax, because the percentage of interstate passengers was not sufficient to bring the ferries within the ambit of being "principally used" for interstate commerce.

However, it has consistently been Campbell's position that the regulations interpreting section 6368 set out its entitlement to the sales tax exemption regardless of whether transportation of interstate passengers was the "principal use." Campbell argues that so long as even one passenger on any particular scheduled ferry boat run was an interstate passenger, the ferry was being used in interstate commerce within the meaning of section 6368.

Both sides moved for summary judgment. Upon a stipulation of facts submitted by the parties, the superior court applied the "principal use" standard to this transaction and held that since the ferries were not principally used in the transportation of interstate passengers, the sale did not fall within the statutory definition of a tax-exempt sale of watercraft as defined by the regulations interpreting section 6368.

Campbell's principal argument is that the superior court committed an error of law by interpreting section 6368 to require it to demonstrate that the ferry boats were *principally used* for transportation of interstate passengers in order to qualify for the sales tax exemption.

Section 6368 measures transactions involving watercraft such as ferry boats carrying passengers for hire and exempts these transactions from sales tax by a single criteria—the watercraft must be used in "interstate or foreign commerce." This statute is amplified by section 1594, subdivisions (a)(1)

and (a)(2) of title 18 of the California Administrative Code.[2] It stands as testimony to the confusing language employed in these regulations that both parties to this appeal claim substantial support for their widely divergent viewpoints in the "clear language" of these administrative regulations. Subdivisions (a)(1) and (a)(2) state: "Tax does not apply to the sale of nor to the storage, use, or other consumption of watercraft which are used, leased to a lessee for use, or sold to persons for leasing to lessees for use for any of the following purposes: [¶] (1) Use in interstate or foreign commerce involving the transportation of persons or property for hire, even though the watercraft operates between termini within the state, such as ferry boats operating entirely within the state but transporting interstate passengers or cargo and barges or tugs that operate entirely within the state convoying or aiding the departure or arrival of vessels to or from points outside the state. [¶] (2) To make voyages both in interstate or foreign commerce and voyages that are exclusively in intrastate commerce provided the principal use of the watercraft is transportation for hire in interstate or foreign commerce. The tax applies with respect to watercraft making voyages both in interstate or foreign commerce and voyages that are exclusively in intrastate commerce where the principal use of the watercraft is in intrastate commerce."

Basic to this controversy is a determination of whether watercraft such as ferry boats operating entirely within the state and principally carrying local or *intrastate* passengers can qualify for "use in interstate or foreign commerce" by occasionally carrying *interstate* passengers. Campbell maintains that subdivision (a)(1) enacts a broad exemption for ferries operating entirely within the state and since the "principal use" standard is not expressly contained in subdivision (a)(1) it should not be judicially imposed as a yardstick to measure the interstate nature of the ferries' activities. Under this interpretation, Campbell would be entitled to the tax exemption if the ferries carried *any* interstate passengers.

The Board, in response, contends that subdivisions (a)(1) and (a)(2) should be construed together. The Board defines the scope of subdivision (a)(1) as allowing a sales tax exemption only if the watercraft is used *exclusively* in interstate or foreign commerce. In conformance with its interpretation, the Board maintains that subdivision (a)(1) creates no special exemption for watercraft such as "ferry boats operating entirely within the state." Rather, the inclusion of this description in subdivision (a)(1) was meant to illustrate that even watercraft operating entirely within the state could qualify for the sales tax exemption if used *only* to transport interstate passengers or cargo. If voyages both in interstate or foreign commerce and

---

[2]Further references to subdivisions (a)(1) and (a)(2) are to the California Administrative Code, title 18, section 1594, unless otherwise indicated.

voyages exclusively in intrastate commerce are taken, as in the instant case, the Board contends that subdivision (a)(2) and the "principal use" standard enunciated therein applies. Accordingly, under the Board's interpretation, because the ferries made voyages both "in interstate or foreign commerce and voyages . . . exclusively in intrastate commerce" Campbell was required to show that their principal use was interstate in character in order to exempt their sale from the tax.

■ Our role is to determine whether the Board properly interpreted its own regulations harmoniously with section 6368. We recognize that "[i]n determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body." (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378]; *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; *Southern Pacific Equip. Co.* v. *State Bd. of Equalization* (1971) 16 Cal.App.3d 302, 306 [94 Cal.Rptr. 107].) In addition, an administrative ruling " 'comes before the court with a presumption of correctness and regularity, which places the burden of demonstrating invalidity upon the assailant [fn. omitted].' " (*Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 133 [126 Cal.Rptr. 339], quoting *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 810 [84 Cal.Rptr. 590].) The ultimate resolution, however, of whether the Board has correctly interpreted its own regulations rests with the courts. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization, supra,* 35 Cal.App.3d at p. 816; *International Business Machines* v. *State Bd. of Equal.* (1980) 26 Cal.3d 923, 930-931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1].)

In resolving the issue, we preliminarily note that the Board's interpretation of its own regulations finds support in *Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441 [34 Cal.Rptr. 872, 386 P.2d 496]. That case examined the purchase of two ships from a California company by a foreign tanker corporation. After the purchase, the ships were leased back to the California oil company which in turn operated the ships within California. The ships were engaged in intrastate activities approximately 70 percent of each year. (*Id.,* at p. 455.) The court denied the sales and use tax exemption claimed under section 6368 because "the lessor did not employ the vessels, themselves, primarily in interstate or foreign commerce." The court went on to explain that "this exemption [section 6368] does not apply to the principal use of the vessels in intrastate operations." (*Id.,* at p. 456.)

■ We find the reasoning of *Union* applicable to the transaction under scrutiny in the instant case. Under section 6368 the Supreme Court undoubtedly held that a transaction involving watercraft principally engaged in local or intrastate activities is subject to taxation despite the fact that some portion of the watercraft's activities can be characterized as interstate in nature. *Union's* rationale is that the exemption created by section 6368 was not intended to apply to the casual or isolated use of the watercraft for interstate purposes. In other words, the court interpreted the term "use in interstate or foreign commerce" to include the principal use standard.

■ Moreover, California Administrative Code, title 18, section 1594 has been the subject of an administrative interpretation for a number of years allowing an exemption under section 6368 for "tugboats engaged in towing or assisting vessels *principally used* for the transportation of passengers or cargoes in interstate or foreign commerce." (Sales Tax Counsel Ruling 600.120.2, (1955), italics added.) This interpretation has particular significance to the question of whether the principal use standard should be applied to ferry boats operating entirely with the state and engaged primarily in local activity. The description of "tugs that operate entirely within the state" is set out along with "ferry boats operating entirely within the state" in the critical language of subdivision (a)(1). The Board's long-standing interpretation extending the principal use standard to the activities of a watercraft expressly described in subdivision (a)(1) refutes Campbell's argument that some type of special exemption is carved out for certain types of watercraft specifically mentioned in subdivision (a)(1). ■ Moreover, we note that an administrative interpretation which has been in existence for a number of years is entitled to particular consideration since it "suggests legislative acquiescence." (*Great Western Financial Corp.* v. *Franchise Tax Bd.* (1971) 4 Cal.3d 1, 7 [92 Cal.Rptr. 489, 479 P.2d 993].)

■ Campbell's suggestion that some type of broad exemption was carved out by subdivision (a)(1) expressly for "ferry boats operating entirely within the state" is unconvincing. It is difficult to conceive of, and Campbell does not assert, any persuasive reason why the Board in promulgating these regulations would subject the vast majority of watercraft to the principal use standard, but single out ferry boats operating within the state for a more relaxed rule. Such distinction does not comport with the design of the statutory language found in section 6368; and the regulation must, if possible, be construed consistently with the statute to which it is subordinate. (*Bonn* v. *California State University, Chico* (1979) 88 Cal.App.3d 985, 990 [152 Cal.Rptr. 267].)

■ As a general rule, statutes granting exemption from taxation are strictly construed to the end that such concession will not be enlarged nor

extended beyond the plain meaning of the language employed. (*Santa Fe Transp. Co.* v. *State Bd. of Equal.* (1959) 51 Cal.2d 531, 539 [334 P.2d 907]; *McConville* v. *State Bd. of Equalization* (1978) 85 Cal.App.3d 156, 159 [149 Cal.Rptr. 194].) Accordingly, Campbell has had the burden of showing that it clearly came within the terms of the statutory exemption from taxation. (*Good Shepherd Lutheran Home* v. *State Bd. of Equalization* (1983) 139 Cal.App.3d 876, 885 [189 Cal.Rptr. 242].) Campbell has not met its burden. The basic scheme of imposing taxes on sales of watercraft engaged principally in local activities, as well as the cases reviewed above and the ruling issued by the Board, all indicate that the principal use standard should be applied to ferry boats operating entirely within the state, but engaged infrequently in interstate activities. Consequently, we conclude that the Board correctly interpreted California Administrative Code, title 18, section 1594, subdivisions (a)(1) and (a)(2) as not conferring a tax exemption on the gross receipts from the sale of the three ferry boats herein.

The judgment is affirmed.

Low, P. J., and King, J., concurred.