[No. B006970. Second Dist., Div. Five. Dec. 1, 1986.]

PARFUMS-CORDAY, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

MAX FACTOR & COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Gibson, Dunn & Crutcher, James G. Phillipp, Robert H. Fairbank and Mark S. Pecheck for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

EAGLESON, J.—In this case, we hold that a wholesaler must pay use tax on free display materials combined with merchandise in a "promotional prepack" which is sold for a single price to retailers outside of California. Accordingly, the trial court's judgment denying recovery of use tax paid under protest is affirmed.

### FACTS

The facts are not in dispute. During the relevant period, plaintiffs Max Factor & Company and Parfums-Corday, Inc. (Max Factor)[1] manufactured

---

[1]This action initially involved two separate lawsuits: Parfums-Corday, Inc. v. State Board of Equalization (Super. Ct. No. C202292) and Max Factor & Co. v. State Board of Equalization (Super. Ct. No. C202293). During the tax period in issue, Parfums-Corday, Inc. was a wholly owned subsidiary of Max Factor & Co. Since both cases involved the same factual and legal issues, the parties stipulated that the final judgment in the Max Factor case would have res judicata and collateral estoppel effect on the Parfums-Corday case.

and sold perfumes and cosmetics to retailers all over the country. The products were marketed in the form of "promotional prepacks" which consisted of (1) a counter or promotional display, and (2) a predetermined assortment of cosmetic or beauty-care merchandise. The display portion of the prepack was designed to be placed on the retailer's shelf so as to entice the consumer to buy the product.

Max Factor's sales literature pictured the promotional displays, and described the styles and quantity of merchandise which would be included in each prepack. The retailer could not order the displays without also ordering a minimum preselected quantity of merchandise. No separate charge was made for the promotional materials, nor was the price of the accompanying merchandise increased to cover the cost of the displays. Instead, each prepack was sold for a single price which represented the cost of the merchandise included therein.

Max Factor originally purchased the promotional displays from the manufacturer under resale certificates, and thereby avoided liability for any tax at this point in the transaction. Max Factor then stored these items in its Los Angeles warehouse, assembled them into prepacks, and shipped them by common carrier to customers both within and outside of California.

In its California sales and use tax returns for the years 1971 through 1974, Max Factor acknowledged its liability for use tax on the promotional materials shipped to retailers in California. However, Max Factor did not include in its use tax calculations the cost of the displays sent out of state.

The State Board of Equalization (Board) subsequently conducted an audit for the tax years in question and concluded that Max Factor owed use tax on the displays sent to out-of-state retailers. This determination was based on Max Factor's failure to satisfy the Board's regulation concerning the "sale" of marketing aids. (Cal. Admin. Code, tit. 18, § 1670, subd. (c) (Regulation 1670(c)).)[2] Since Max Factor had not separately charged its

---

[2] Regulation 1670(c) provides: "Marketing Aids. The tax applies to sales of advertising material, display cases, counter display cards, racks, and other similar marketing aids to persons acquiring such property for use in selling other property to customers. A marketing aid is deemed to be 'sold' if a consideration of at least equivalent to 50 percent of the purchase price of the aid is obtained from the customer, either by the making of a separate charge or by increasing the regular sales price of other merchandise sold to the customer and delivered with the marketing aid.

"Manufacturers or others who provide marketing aids to persons engaged in selling their products without obtaining reimbursement equivalent to 50 percent of the purchase price of the aid are deemed to be the consumers of the property provided. In such case the sales tax applies to the sale to or the use tax applies to the use by the manufacturer or other person purchasing the aid for distribution whether it is delivered directly to the person engaged in selling its product or is delivered to a distributor, wholesaler, or jobber for redelivery to such persons with 'deal merchandise.' Distributors, wholesalers, or jobbers are the retailers of aids which they 'sell' to persons engaged in marketing their products."

retailers for the displays or increased the cost of the accompanying merchandise, Max Factor was deemed to be the "consumer" of the displays. Consequently, a use tax was assessed against all of the displays shipped from California, regardless of their ultimate destination.

After receiving notice of the tax deficiency, Max Factor filed a written petition for redetermination with the Board. An informal hearing was held, and the Board's hearing officer adopted the conclusions of the auditor. Max Factor paid the tax under protest, and submitted a written claim for refund. The Board denied this claim.

In preparation for trial, the parties entered into a written stipulation settling certain key factual issues. The stipulation also specified that the only controverted legal issue was whether use tax was owed on the displays shipped outside of California.

After receiving this stipulation into evidence and hearing supplemental testimony, the trial court, sitting without a jury, ruled in favor of the Board. The court's detailed statement of decision concluded, in pertinent part, that: (1) Regulation 1670(c) was a reasonable and valid administrative interpretation of the sale and use tax statutory scheme; (2) Max Factor's promotional displays were "marketing aids" transferred without consideration within the meaning of Regulation 1670(c); (3) Max Factor made a taxable use of all of the displays by receiving and storing them in California; and (4) there was no applicable statutory exemption from the tax. Max Factor appeals from the ensuing judgment denying recovery of the taxes paid under protest.

## DISCUSSION

■ California's Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.)[3] acts as a "double filter designed to catch all transactions" involving the purchase or enjoyment of tangible personal property in this state. (*Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441, 449 [34 Cal.Rptr. 872, 386 P.2d 496].) The sales tax applies only to retail sales in California. (§ 6051.) A retail sale is a transfer for consideration occurring for any purpose other than for resale in the regular course of business. (§§ 6006, subd. (a), 6007.)

The use tax applies, by definition, to almost all other transfers of goods in the state. Specifically, it embraces the storage, use, or other consumption

---

[3]All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

of property, except that which is sold in the regular course of business. (§§ 6009, 6201.) ▆ The use tax also does not apply to property otherwise exempted by statute or by constitutional provision. (*Stockton Kenworth, Inc. v. State Bd. of Equalization* (1984) 157 Cal.App.3d 334, 336 [203 Cal.Rptr. 698].)

A buyer-wholesaler who provides the seller-manufacturer with a resale certificate evidences an intent to resell the property, and thereby places the transaction under the "sale for resale" exemption to both taxes. (§§ 6091, 6092, 6241; Cal. Admin. Code, tit. 18, § 1668, subd. (a)(1).) However, where the wholesaler makes a purchase under a resale certificate but later uses the goods without reselling them, a use tax is due. (§§ 6094, subd. (a), 6244, subd. (a).)

Regulation 1670(c) provides guidelines in determining whether the delivery of marketing aids to a retailer is a "sale" or a "use." Under the regulation, these sales props are deemed to be sold if "a consideration of at least equivalent to 50 percent of the purchase price of the aid is obtained from the customer." The only permissible means of proving the 50 percent recoupment are either to charge the customer separately for the items, or to increase the regular price of the merchandise delivered with the marketing aids. In the absence of such proof, the wholesaler is deemed to be the consumer of the goods and is subject to the broad use tax provisions in sections 6094 and 6244.

In the instant case, Max Factor argues that it made no taxable use of the promotional displays sent to out-of-state retailers because: (I) all of the displays were "sold," and (II) the displays sent out of state were exempt from use tax by virtue of section 6009.1.[4] Each of these contentions, as well as the applicable standard of review, will be discussed separately below.

## I. "Sale" or "Use" Under Regulation 1670(c)?

▆ Max Factor's first contention is that it was the seller, not the consumer, of the displays within the meaning of Regulation 1670(c).[5] This

---

[4]Section 6009.1 states that "'[s]torage' and 'use' do not include the keeping, retaining or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state . . . ."

[5]Respondent claims that this argument "is contrary to the position Max Factor maintained before the Board." We find no such inconsistency. All along, one of Max Factor's major contentions has been that the out-of-state transfer of displays was a sale, and therefore exempt from both sales and use tax. The issue was raised in both the refund claim and at trial.

argument is based solely on the manner in which the prepacks were advertised and packaged. Max Factor claims that, because its customers "specifically ordered the displays as integral components of the promotional prepacks," all of the contents (displays and merchandise) were part of each sale.

■ We first address the appropriate standard of review for this type of claim. Despite its vigorous arguments to the contrary, Max Factor has launched a facial attack on Regulation 1670(c). Specifically, Max Factor criticizes the restrictions which the regulation places on proving that a marketing aid was sold to retailers. Instead of limiting proof of a 50 percent recoupment to evidence of a "separate charge" or "increased price," Max Factor insists that the combined promotional/merchandise nature of the prepacks also should be a decisive factor.

Unlike the validity of the Board's *interpretation* of a regulation, which is a question of law for the appellate court (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321; 550 P.2d 593]), the validity of a formal regulation is presumed. Our inquiry is limited to determining whether the classification is "arbitrary, capricious or [without] reasonable or rational basis." (*Id.* at p. 93, fn. 4.)

■ The recent case of *Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60 [219 Cal.Rptr. 142, 707 P.2d 204] upheld the reasonableness of Regulation 1670(c) in the face of strikingly similar facts and arguments. There, a wholesaler of novelty items offered a free disposable cardboard display rack with a minimum purchase of the products to be displayed. As indicated in the wholesaler's catalogs, the price charged for each minimum purchase was the same whether or not the retailer actually took delivery of the display rack. The wholesaler, who originally had purchased the display racks under resale certificates, stored them in its California warehouse before shipping them to retailers nationwide.

The Board found the racks to be marketing aids under Regulation 1670(c), and imposed a use tax on them. Since the wholesaler had not billed customers for the racks or raised the price of the accompanying merchandise, these transactions could not be considered "sales." The wholesaler disagreed, arguing that a sale was evidenced by the fact that it had recouped the entire cost of the racks plus a profit.

The Supreme Court rejected this novel definition of a "sale" and upheld the regulation's limits on proving sufficient consideration: "The requirement of a 'separate charge' or an 'increased price' as evidence of the sale of a

marketing aid is entirely reasonable. Its purpose is to provide objective evidence of a sale pursuant to section 6006 (i.e., evidence of a consideration given) and to assist the Board and its auditors in identifying the billing rate for the particular item so that they may determine whether the supplier has satisfied the 50 percent rule." (*Id.* at p. 70.) The court concluded that the wholesaler's bare claim of having profited from the use of the promotional aids did not establish whether those items were actually bargained for as part of each purchase. Consequently, the Board had properly imposed a use tax on the cardboard racks because the wholesaler had warehoused them in California before sending them to retailers.

The transfer of promotional displays in this case likewise does not pass Regulation 1670(c)'s reasonable, objective test for establishing a sale. Max Factor emphasizes the fact that its sales brochures highlighted the displays, and that the customer's decision to purchase the prepack was based in large part upon the appeal of the promotional items. However, it is undisputed that Max Factor did not separately bill the customers for the displays or increase the price of its regular merchandise. Thus, because the Board had no clear evidence that the displays were bargained for as part of each purchase, Max Factor was properly deemed to be the "consumer" of those items.

## II. *Exempt From Use Tax Under Section 6009.1?*

Max Factor insists that even if it is the "consumer" of the displays, no taxable use occurred inside of California. The counter displays allegedly were out-of-state "gifts" which were exempt from use tax as goods "transported" through the state "for use thereafter solely outside the state." (§ 6009.1.)

Certain fundamental rules must be kept in mind in reviewing this type of claim. First, the burden is on the taxpayer to show that its activity clearly falls within the terms of the exemption. (*H.J. Heinz Co.* v. *State Board of Equalization* (1962) 209 Cal.App.2d 1, 4 [25 Cal.Rptr. 685].) Second, "statutes granting exemption from taxation are strictly construed to the end that such concession will not be enlarged nor extended beyond the plain meaning of the language employed." (*Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27 [118 Cal.Rptr. 422].) Finally, where, as here, the facts are uncontroverted, interpretation of the statute is purely a question of law. (*Good Shepherd Lutheran Home* v. *State Bd. of Equalization* (1983) 139 Cal.App.3d 876, 885 [189 Cal.Rptr. 242].)

The plain meaning of section 6009.1 is clear. There is no taxable use if the property has no function in California other than to move through the state for consumption elsewhere. Thus, in *Stockton Kenworth, Inc.* v. *State Bd. of Equalization, supra,* 157 Cal.App.3d 334, the court applied section 6009.1 to the taxpayer's acquisition of trucks which were to be leased solely to out-of-state carriers. The court found no taxable use because the only contact the trucks had with California was to be driven *sans* payload through the state to lessees in other states.

If, however, the property has some "functional purpose" in California other than to serve as a mere object in transit, there is a taxable use. This principle applies even where the property eventually is "substantially consumed in interstate commerce outside of this state." (*American Airlines, Inc.* v. *State Board of Equalization* (1963) 216 Cal.App.2d 180, 192 [30 Cal.Rptr. 590].)

*Wallace Berrie, supra,* 40 Cal.3d at page 60 demonstrates that the storage of marketing aids in California does serve such a taxable purpose. Although the court had no occasion to address section 6009.1, it upheld the assessment of a use tax against marketing aids which were given to retailers "throughout the country." (*Id.* at p. 63.) The wholesaler had "used" these materials because they were delivered to and stored in its California warehouse.

Max Factor similarly warehoused the displays in California after receiving them from its vendor. The displays were then assembled into prepacks which were used to increase the overall saleability of the merchandise to both· retailers and consumers. Consequently, Max Factor is liable for use tax on the promotional displays, regardless of their ultimate destination. (§§ 6009, 6094, subd. (a), 6244, subd. (a).)

### DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.