[No. B103978. Second Dist., Div. Three. Mar. 11, 1998.]

FAMILY PLANNING ASSOCIATES MEDICAL GROUP, INC., Plaintiff and Respondent, v.
S. KIMBERLY BELSHÉ, as Director, etc., Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Richard T. Waldow, Deputy Attorneys General, for Defendant and Appellant.

Hooper, Lundy & Bookman and Patric Hooper for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.—**

### INTRODUCTION

At issue in this appeal is whether the California Department of Health Services (the Department) properly interpreted Medi-Cal regulations when it determined that Family Planning Associates Medical Group, Inc. (the Medical Group) was not entitled to be reimbursed separately for a component of an abortion procedure known as "dilation and extraction." In a postpayment audit of the cost reports for two of the Medical Group's clinics, the Department interpreted the Medi-Cal regulations to disallow as a separate cost item the office visit held two days before the abortion for the purpose of inserting a hygroscopic cervical dilator. Based on its interpretation, the Department concluded it had overpaid the Medical Group its Medi-Cal reimbursement and demanded repayment. The Medical Group filed a petition for administrative mandate challenging the Department's interpretation of its regulations. The trial court granted the Medical Group's petition, overturning the decisions of the administrative law judge and the Director of the Department. In its appeal, the Department argues its interpretation must be upheld because it was not arbitrary or capricious. Pursuant to the regulations promulgated under Welfare and Institutions Code sections 14105 et seq. and 14077, we hold the trial court's conclusion of law that the cost item for the insertion of a cervical dilator must be separately billed and reimbursed by Medi-Cal was error. Accordingly, the judgment is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

The Medical Group operates 22 facilities throughout California which provide family planning services. The various facilities run by the Medical Group perform one-third to one-half of all Medi-Cal-funded abortions in California, and as such, constitute the largest medical provider of abortion and care in the state.

The Department audited claims from two of the Medical Group's representative facilities pursuant to Welfare and Institutions Code section 14170. As a result of the Modesto facility audit, covering the period from March 1989 through August 1990, the Department demanded return of $29,289.59, for various claims which the Department disallowed. After the audit of the San Diego facility for the period July 1990 through December 1991, amended three times, the Department demanded repayment of $20,205.48.

Of relevance to this appeal, the Department disallowed the claims for the cost of an office visit to insert hygroscopic cervical dilators one to two days before a second trimester dilation and extraction (D&E) abortion. The dilators, known as laminaria, are made from desiccated sterilized seaweed and are placed into the cervix to induce slow dilation. The number of laminaria used depends on the size of the fetus. The timing of laminaria insertion depends on the gestational age of the fetus, but must occur six hours to two days before the abortion in order for the dilation to take effect. As a result of the Department's demand, the Medical Group requested an administrative hearing.

At the hearing before the administrative law judge, the Medical Group argued the office visit one or two days before the D&E, during which the laminaria are inserted, is separately billable as an office visit. The Department took the position the insertion of laminaria had already been compensated as part of the so-called "global fee" or "package" for the D&E abortion itself.

The administrative law judge issued a proposed decision denying the Medical Group's appeal of the Department's decision to disallow separate fees for the insertion of laminaria. The administrative law judge reasoned that the regulations provide a code for "packages" for specified procedures. The package includes the operation per se, other activities involved in actually performing the operation (e.g. anesthesia) and uncomplicated follow-up care. The administrative law judge found the insertion of laminaria before the actual abortion to be an integral part of the D&E procedure.

The deputy chief director of the Department issued the Department's final decision upholding the disallowance of the cost for the office visit as a separate item of cost from the D&E stating, "[t]he 'global fee' paid by Medi-Cal for a dilation and extraction (D&E) abortion includes payment for the insertion of laminaria, even when such insertion occurs one or two days prior to the physical abortion procedure."

The Medical Group filed its petition for writ of mandate under Code of Civil Procedure section 1094.5, arguing the director's decision was procedurally and substantively invalid because it was based on a policy contained

in the Medi-Cal Provider Manual, which was not promulgated pursuant to the rulemaking requirements of the Administrative Procedures Act (Gov. Code, § 11340 et seq. (hereinafter the APA)) and which is inconsistent with other Medi-Cal regulations.

The trial court granted the Medical Group's petition, ordering that a peremptory writ of mandate issue compelling the Department (1) to set aside that portion of the final decision concerning the payment for the insertion of laminaria and office visits occurring prior to the day of the abortion and (2) to rescind all overpayment notices. In its statement of decision, the court noted separate regulatory codes are assigned to abortion, to the insertion of laminaria sticks and to office visits occurring on a day prior to the abortion. The court explained, the regulations "require[] only that certain specific supplies and procedures, which do not include the insertion of laminaria or preoperative office visits . . . be considered part of the 'package' for the abortion surgical procedure . . . under the Department's own Medi-Cal Manual, services furnished prior to the day of an abortion are required to be billed separately." The trial court explained the Medi-Cal Provider Manual was not regulatory authority because it was not promulgated pursuant to the rulemaking requirements of the APA. The Department's disallowance was deemed by the court to be procedurally invalid insofar as it relied on the manual for its conclusion. The court was further persuaded by the fact the Medical Group historically billed Medi-Cal separately for these two procedures and always fully disclosed the fact that laminaria were inserted in the office visit one to two days before the D&E. The court was further influenced by the testimony that greater costs are incurred when insertion of laminaria occurs two days before rather than only one day before the D&E. Hence, the court explained, "[t]he 'global' or 'package' fee paid by the Department under its current interpretation arbitrarily pays the same sum to a provider whether one day or two days of insertion . . . is necessary to be performed." The court held therefore, the Department's interpretation, reflected in the director's final judgment in favor of the Department, was arbitrary and capricious and thus an abuse of discretion. The Department filed its timely appeal.

CONTENTION

The Department contends its interpretation and application of the regulations are not arbitrary or capricious with the result the decision of the administrative law judge should be upheld and the judgment of the trial court should be reversed.

The Medical Group contends no reasonable person could have anticipated the Department's global fee interpretation of the Medi-Cal Provider Manual,

regulations and guidelines, because it is irrational and inconsistent with plain language.

## DISCUSSION

### 1. *Standard of review.*

■ On appeal from the grant or denial of a petition for administrative mandate, the appellate court reviews the record to determine whether substantial evidence supports the trial court's findings. (*Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1024 [127 Cal.Rptr. 11]; *Intercommunity Medical Center* v. *Belshé* (1995) 32 Cal.App.4th 1708, 1711 [39 Cal.Rptr.2d 43].) However, we are not bound by the trial court's findings to the extent they constitute conclusions of law. (*Purdy* v. *Teachers' Retirement Board* (1980) 113 Cal.App.3d 942, 949 [170 Cal.Rptr. 360].) "[We] need only determine whether the Department's ruling was so arbitrary and capricious as to amount to an abuse of discretion. [Citation.]" (*Intercommunity Medical Center, supra,* at p. 1711.)

■ In resolving this dispute, we abide by the settled rule, " '[i]n determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body.' [Citations.] . . . [A]n administrative ruling ' "comes before the court with a presumption of correctness and regularity, which places the burden of demonstrating invalidity upon the assailant[]." ' [Citations.]" (*Campbell Industries* v. *State Bd. of Equalization* (1985) 167 Cal.App.3d 863, 868 [213 Cal.Rptr. 533], fn. omitted; *Intercommunity Medical Center* v. *Belshé, supra,* 32 Cal.App.4th at p. 1711.)

Nonetheless, as noted, ". . . the foregoing 'rule of liberal construction . . . should not blindly be followed so as to eradicate the clear language and purpose of the statute. . . . [Citations.]' [Citation.] . . . . 'The ultimate interpretation of a statute is of course an exercise of judicial power and it is the responsibility of the courts to declare its true meaning even if it requires rejection of an earlier erroneous administrative interpretation. [Citations.]' [Citations.]" (*Wheeler* v. *Board of Administration* (1979) 25 Cal.3d 600, 605 [159 Cal.Rptr. 336, 601 P.2d 568]; *Physicians & Surgeons Laboratories, Inc.* v. *Department of Health Services* (1992) 6 Cal.App.4th 968, 986 [8 Cal.Rptr.2d 565].)

With these rules in mind, we turn to the Medi-Cal regulations here relevant.

2. *The regulations.*

Pursuant to Welfare and Institutions Code section 14077, the Department established a schedule for reimbursing physician services to Medi-Cal patients. The maximum reimbursement rates for physician services, as listed in title 22, California Code of Regulations, section 51503, are based on formulae for each medical procedure. The specific medical procedures are identified by a code number taken from the Physicians' Current Procedural Terminology Code (CPT), prepared and updated by the American Medical Association. The CPT provides a listing and description of all medical services. Title 22 of the California Code of Regulations, section 51050 has incorporated by reference the CPT. (22 Cal. Code Regs., tit 22, § 51050.)

In its section on "Surgery," the CPT provides explanatory guidelines to aid doctors in reporting their services. Guideline No. 2, entitled "Listed Surgical Procedures includes the operation per se, local infiltration, metacarpal/digital block or topical anesthesia when used, and the normal, uncomplicated follow-up care. This concept is referred to as a 'package' for surgical procedures."

"Separate Procedures" are defined in guideline No. 7, which provides, "[s]ome of the listed procedures are *commonly carried out as an integral part of a total service*, and as such do not warrant a separate identification. When, however, such a procedure is *performed independently of, and is not immediately related to, other services, it may be listed as a 'separate procedure.'* Thus, *when a procedure that is ordinarily a component of a larger procedure is performed alone for a specific purpose*, it may be considered to be a *separate* procedure." (Italics added.)

Guideline No. 12 concerns "Starred (*) Procedures or Items." Therein, "[c]ertain relatively small surgical services involve a readily identifiable surgical procedure but include variable preoperative and postoperative services (e.g., incision and drainage of an abscess, injection of a tendon sheath, manipulation of a joint under anesthesia, dilation of the urethra). Because of the indefinite pre- and post-operative services the usual 'package' concept for surgical services (see above) cannot be applied. Such procedures are identified by a star (*) following the procedure code number. [¶] When a star (*) follows a surgical procedure code number, the following rules apply: [¶]

a. The service as listed includes the surgical procedure only. Associated pre- and post-operative services are not included in the service as listed."[1]

 Under the CPT, there are separate code numbers for D&E abortion (CPT Nos. 59840 or 59841) insertion of laminaria sticks (CPT No. 59200) and office visits (CPT Nos. 90000-90020).

3. *The Department's ruling disallowing separate reimbursement for laminaria insertion is a reasonable interpretation of the CPT guidelines.*

Based on a reading of the plain language contained in the regulations and review of the testimony before the administrative law judge with an eye to harmonizing them (*People* v. *Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420]), we conclude they support the Department's ruling that the cost for insertion of laminaria is not to be billed or reimbursed as a cost item separate from the D&E abortion.

The starting point for our analysis is CPT guideline Nos. 2 and 7. Guideline No. 2 defines for purposes of "global billing," a "package" of procedures which includes the "operation per se," the anesthesia and uncomplicated follow-up care. Guideline No. 7 defines a "separate procedure" as one which is "performed independently of, and is not immediately related to, other services, and not a "component of a larger procedure."

The testimony before the administrative law judge shows the procedure for inserting a cervical dilator is an essential and indispensable part of the "operation per se": *The sole purpose of utilizing laminaria is to cause dilation for the "dilation and extraction" abortion.* According to Dr. Sidney Edward Weschler, professor of obstetrics and gynecology at University of Southern California, "with D&E's you always have to use laminaria or some other device for dilating the cervix . . . ." No independent purpose exists for inserting laminaria in the second trimester of a pregnancy other than conducting a D&E abortion and so it constitutes a component of the larger

---

[1]The Medi-Cal Provider Manual declares that the insertion of laminaria sticks to gain dilation prior to abortion is considered part of the abortion procedure and is not separately reimbursable. Section 200-15-2 of the manual, published in August 1989, concerning "Cervical Dilation with Hygroscopic Agents," states clearly: ". . . *the procedure of inserting [laminaria] sticks into the cervix to gain dilation prior to abortion is considered a part of the abortion procedure and is not separately reimbursable.* However, the cost of the [laminaria] sticks is billable." The parties do not really dispute that the Medi-Cal Provider Manual is not a regulation and does not carry the force of law. While we need not consider the Medi-Cal Provider Manual in reaching our decision, we note it supports the Department's position.

D&E. Cervical dilation is the "dilation" part of the "dilation and extraction" abortion. (Guideline Nos. 2 and 7.)[2] As such, it does not fit the definition of "separate procedure" because it is not one which "is performed independently of, and not immediately related to, other services." We are not persuaded otherwise by the fact the insertion occurs at least six hours and up to forty-eight hours before the extraction portion of the abortion, because conceptually and practically, laminaria insertion is "immediately related to" and an "integral part of [the] total" D&E abortion service. (Guideline No. 7.) Because it is part of the D&E, insertion of the laminaria is part of the operation per se and reimbursed as part of the surgical "package."

The Medical Group argues "by administrative fiat, . . . the Medi-Cal program has eliminated the [CPT for laminaria insertion] as a payable Medi-Cal billing code." Thus, to recover payment for the service, the Medical Group was forced to bill the service as a "comprehensive office visit" which is a "medical procedure" under guideline No. 1, rather than a surgical "package" under guideline No. 2. As an office visit occurring up to two days before the surgery, the Medical Group argues, this service cannot be considered as follow-up care, a component of the abortion.

Medical Group's interpretation is sophistry. Essentially, the Medical Group argues it *renamed* the procedure as an office visit because there was no code number for it. Continuing with its logic, as a result of the renaming, the procedure has become "medicine," not "surgery" is a separate service and separately billable. Although the CPT has a separate code number for insertion of laminaria, under guideline No. 7, that number need not be used when the procedure is used as part of a *"total service."* Just because there is a separate code number does not render the procedure separate and distinct from the abortion. Based on its interpretation of guideline No. 7 and the D&E, the Department no longer utilizes the separate CPT for laminaria insertion in its billing practices. That as a result, the Medical Group renamed the procedure for the purpose of achieving reimbursement, does not change the essential character of the service as integral to the D&E. We recognize the Medical Group historically billed Medi-Cal separately for laminaria and the D&E procedure and fully disclosed that fact to the Department. Nonetheless, because the evidence supports the conclusion the insertion of laminaria is appurtenant to the "total service," the Department's decision to reimburse it as part of the abortion is not unreasonable.

---

[2]That guideline No. 2 fails to refer to preoperative services in its definition of "package," does not mean preoperative services are necessarily precluded. Conceptually, the insertion of laminaria is part and parcel of the D&E abortion and need not be included as a preoperative service.

Both parties cite guideline No. 12 in support of their particular interpretation. The Department argues, pursuant to guideline No. 12, subdivision (a), because the CPT for a D&E abortion does not have a star next to it, insertion of laminaria comprises part of the global fee for the abortion package and is not separately billed. The Medical Group disagrees, arguing instead that because D&E is not a "starred" procedure, guideline No. 12 is "simply not applicable to the abortion procedure." The Department's analysis is more thorough.

Reading every part of the CPT guidelines to harmonize the entire scheme, (*People* v. *Pieters*, *supra*, 52 Cal.3d pp. 898-899), subdivision (a) of guideline No. 12 provides when a star follows a procedure code number, "[t]he service . . . includes the surgical procedure only. Associated pre- and post-operative services are not included in the service as listed." D&E abortions have their own surgical procedure code. However, because it is not starred, the opposite rule applies, namely associated preoperative services are intended to be included in the service as listed. Stated otherwise, if the D&E abortion were intended to be divided so that its constituent parts were separately billed, there would be a star next to its CPT code.

Finally, the Medical Group argues the Department's interpretation is arbitrary because it does not take into consideration that the cost to the provider to insert the laminaria two days in advance is more than if the dilation were begun closer to the time of the abortion. We are unpersuaded. If the cost differs depending on when the laminaria are inserted and the Medical Group seeks reimbursement for the difference, then it should have been billed differently for the insertion which occurs on the second day before the D&E procedure than those which occur within 24 hours. The fallacy of the Medical Group's argument is revealed in the fact the medical group never billed differently based on when the service was provided.

In short, the Department's construction of its own regulations is tenable. The Department " '. . . has broad discretion under the [Medi-Cal] Act to define "reasonable costs" and to determine how most efficiently to estimate and allocate costs . . .' " (*Intercommunity Medical Center* v. *Belshé, supra,* 32 Cal.App.4th at p. 1715.) Toward that end, the Department is charged with the task of limiting the rates of payment for health care services and adopting rules and regulations as are necessary for carrying out the policies. (Welf. & Inst. Code, § 14105.) That minds could differ on the construction

of the regulations here only supports the reasonableness of the Department's interpretation.[3] The Medical Group did not demonstrate the Department's interpretation was arbitrary or capricious.

## DISPOSITION

The judgment is reversed and the trial court is directed to recall the writ of mandate issuing over the date of April 25, 1996. Appellant awarded costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

---

[3]It is of no moment that the Medical Group is able to bill other third party payors, such as insurance companies, separately for the insertion of laminaria. Those companies are not constrained by the Medi-Cal regulations.