184 Cal.App.4th 163 (2010)
ANGEL BATT, Plaintiff and Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.
No. A123253.
Court of Appeals of California, First District, Division Two.
April 28, 2010.
*166 Berding & Weil, Daniel L. Rottinghaus, Fredrick A. Hagen; and Paul G. Kerkorian for Plaintiff and Appellant.
Dennis J. Herrera, City Attorney, Julie Van Nostern, Chief Tax Attorney, and Peter J. Keith, Deputy City Attorney, for Defendant and Respondent.

OPINION
RICHMAN, J.
In Batt v. City and County of San Francisco (2007) 155 Cal.App.4th 65 [65 Cal.Rptr.3d 716], we held that an individual could not maintain a class action for refund of a municipal tax absent statutory authorization. Unquestioned in our decision was the right of that individual to prosecute the action on her own behalf. That individual, plaintiff Angel Batt, thereafter had a bench trial on her claim that the City and County of San Francisco (the City) improperly required hoteliers to apply the City's hotel *167 tax to parking charges, challenging the validity of the administrative regulation that required collection on the grounds that it was not a proper tax on the "occupancy" of a hotel room. The trial court rejected her claim, upholding as valid the application of the City's hotel tax to parking charges. We agree, and we affirm.

BACKGROUND
Plaintiff is a resident of San Mateo County. On August 6, 2005, she drove to San Francisco and stayed overnight at the Ritz-Carlton Hotel. In addition to what she was charged for the room, she was charged $55 for parking her automobile. Of the $55, $7.70, or 14 percent, was imposed pursuant to the City tax on the transient occupancy of hotel rooms (the Hotel Tax).
Originally adopted in 1961, the Hotel Tax imposes a levy of 14 percent "on the rent for every occupancy of a guest room in a hotel in the City and County." (S.F. Bus. & Tax Regs. Code, § 502; see id., § 502.6-1.) "Occupancy" is defined as "The use or possession, or the right to the use or possession of any room or apartment in a hotel or the right to the use or possession of the furnishings or to the services and accommodations accompanying the use and possession of the room." (Id., § 501, subd. (c).) "Guest room" is defined as "A room occupied, or intended, arranged, or designed for occupation, by one or more occupants." (Id., § 501, subd. (e).) The tax is to be collected from the occupant/renter by the hotel operator, and transmitted to the city tax collector. (Id., §§ 503, 504.)
The City of San Francisco's Treasurer and Tax Collector (Tax Collector) is authorized to "promulgate regulations and issue rules, determinations and interpretations consistent with the provisions of the Business and Tax Regulations Code as may be necessary or appropriate for the purpose of carrying out and enforcing the payment, collection and remittance of taxes ...." (S.F. Bus. & Tax Regs. Code, § 6.16-1 (section 6.16-1).) Pursuant to this grant of authority, in December 2003, that official promulgated a number of "Hotel Tax Guidelines" (the Guidelines) advising hotel operators that the Hotel Tax applied to a number of charges, one of which was "Charges for parking (including valet services) for hotel guests," including "(i) charges to hotel guests for parking located on the hotel premises regardless how charged, and (ii) charges to hotel guests for parking located off the hotel premises where such charge is added to the room bill and paid to the hotel operator."
After plaintiff's administrative claim for refund was denied, she filed this action in January 2006, alleging that "imposition of the Hotel Tax on Parking Charges is unlawful and in violation of the [Hotel Tax] Ordinance. The Ordinance only authorizes the imposition of the Hotel Tax `on the rent for *168 every occupancy of a guest room in a hotel,' whereas the Guidelines purport to extend the Hotel Tax to the Parking Charges. Parking Charges, however, are not `rent for ... occupancy of a guest room,' and the imposition of the Hotel Tax on such charges contravenes the [Hotel Tax] Ordinance and is unlawful."
Our decision in the first appeal halted plaintiff's attempt to maintain her action as a "class and taxpayer representative" on behalf of "all who paid a `Hotel Tax' on their hotel parking charge." Plaintiff maintained her individual action for declaratory and injunctive relief to halt the collection of that charge, and the matter came on for trial before the Honorable Curtis Karnow, submitted on the basis of a "Joint Stipulation of Undisputed Facts," the City's unopposed request for judicial notice, briefs, and argument. Judge Karnow filed a thoughtful and exhaustive statement of decision, rejecting all of plaintiff's challenges to the Hotel Tax as interpreted by the Guidelines to apply to hotel parking charges. Plaintiff perfected this timely appeal from the judgment entered in due course.

DISCUSSION

Establishing the Standard of Our Review
We would ordinarily start our analysis by establishing the standard of review, which at first glance would seem to be that "The application of a taxing statute to uncontradicted facts is a question of law, and this court is accordingly not bound to accept the trial court's findings of fact made from the uncontradicted facts shown in the parties' stipulation and the documentary evidence." (Communications Satellite Corp. v. Franchise Tax Bd. (1984) 156 Cal.App.3d 726, 746 [203 Cal.Rptr. 779]; accord, Microsoft Corp. v. Franchise Tax Bd. (2006) 39 Cal.4th 750, 758 [47 Cal.Rptr.3d 216, 139 P.3d 1169]; Limited Stores, Inc. v. Franchise Tax Bd. (2007) 152 Cal.App.4th 1491, 1496 [62 Cal.Rptr.3d 191].) However, plaintiff means to overturn not just Judge Karnow's judgment, but the Tax Collector's promulgation of the Guidelines implementing the Hotel Tax. If plaintiff is correct that Guidelines are ultra vires, their invalidity moots Judge Karnow's contrary conclusion, and essentially demands that plaintiff prevail. (See California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2] ["`Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.'"]; Association for Retarded Citizens v. Department of Developmental Services (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150] ["Administrative action that is not authorized... is void."].)
*169 (1) As previously mentioned, the Tax Collector is statutorily authorized to "promulgate regulations and issue rules, determinations and interpretations consistent with the provisions of the Business and Tax Regulations Code as may be necessary or appropriate for the purpose of carrying out and enforcing the payment, collection and remittance of taxes ...." (S.F. Bus. & Tax Regs. Code, § 6.16-1.) Although this statute does not expressly mention the promulgation of "guidelines," both sides appear to accept that the Guidelines at issue qualify as "rules, determinations [or] interpretations." So do we.
But plaintiff contends that the Guidelines are invalid because they go beyond "carrying out and enforcing the payment, collection and remittance of taxes" collectible under the Hotel Tax as properly construed. Plaintiff argues that the Guidelines on parking amounts to "a new tax on hotel parking," and thus impermissibly extends the Hotel Tax "because parking space is not a `guest room' and does not `accompany' the room's `use and possession.'" Under this general heading plaintiff argues that "the Tax Collector's new tax" as implemented by the Guidelines (1) "change[s] the definition of `occupancy'"; (2) "conflicts with the Board of Supervisors' intent to specifically exempt hotel parking," as shown by the City's parking tax ordinance; and (3) "also violates the California Constitution by increasing the Hotel Tax without a vote of the electorate."
(2) Plaintiff is not challenging the validity of the Hotel Tax itself, only the Tax Collector's interpretative Guidelines; it is the administrative interpretation which she claims is illegitimate because it extends the application of the Hotel Tax beyond the proper scope of its language. In short, plaintiff seeks to overturn not the tax itself, but only the interpretation of it adopted by the Tax Collector. In this situation, the interpretation of the Hotel Tax and the Guidelines presents a question of law, which warrants no particular deference from this court.[1] (See State Building & Construction Trades Council of California v. Duncan (2008) 162 Cal.App.4th 289, 302-305 [76 Cal.Rptr.3d 507]; Yamaha Corp. of America v. State Bd. of Equalization (1999) 73 Cal.App.4th 338, 349-354 [86 Cal.Rptr.2d 362]; see also San Francisco Fire Fighters Local 798 v. City and County of San Francisco (2006) 38 Cal.4th 653, 667-668 [42 Cal.Rptr.3d 868, 133 P.3d 1028].)
Hoping to have the Guidelines classified as "quasi-legislative," the City contends that "deferential review is proper"indeed, going so far as to assert *170 that our review must be "most deferential." The City is only partially correct, and in a sense that is not really applicable here.
(3) Such deference is extended only "if the court is satisfied that the rule in question falls within the lawmaking authority delegated ..., that the rule is reasonably necessary to implement the purpose of the statute, and that it is consistent with the controlling law ...." (Yamaha Corp. of America v. State Bd. of Equalization, supra, 73 Cal.App.4th 338, 349-350.) Such an inquiry obviously requires examination of the statute and the regulation(s), and that examination would be de novo because it entails what we have called, "the quintessential judicial function." (State Building & Construction Trades Council of California v. Duncan, supra, 162 Cal.App.4th 289, 304; accord, Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7-8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) As other courts have recognized, deference is inappropriate on this point: "In deciding whether the regulation conflicts with its legislative mandate, the court does not defer to the agency's interpretation of the law under which the regulation issued, but rather exercises its own independent judgment." (Aguiar v. Superior Court (2009) 170 Cal.App.4th 313, 323 [87 Cal.Rptr.3d 813]; accord, Association of California Ins. Cos. v. Poizner (2009) 180 Cal.App.4th 1029, 1045 [103 Cal.Rptr.3d 458].) Put otherwise, the Guidelines would not need this deference if they had already survived the analysis that is the core of plaintiff's challenge. (Cf. Association for Retarded Citizens v. Department of Developmental Services, supra, 38 Cal.3d 384, 391 ["if the court concludes that the administrative action transgresses the agency's statutory authority, it need not proceed to review the action for abuse of discretion; in such a case, there is simply no discretion to abuse ..."].)
(4) "An agency invested with quasi-legislative power to adopt regulations has no discretion to promulgate regulations that are inconsistent with the governing statute ...." (Colmenares v. Braemar Country Club, Inc. (2003) 29 Cal.4th 1019, 1029 [130 Cal.Rptr.2d 662, 63 P.3d 220].[2]) Characterizing the promulgation of the Guidelines as quasi-legislative adds nothing pertinent to resolving the purely legal issue presented here, namely, whether the Guidelines impermissibly expand the reach of the Hotel Tax. This is the issue we now address.

The Guidelines Are Valid
Plaintiff's reasoning runs as follows: The Hotel Tax "imposes a combined 14% tax on `the rent of every occupancy of a guest room in a hotel in [San *171 Francisco].' [¶] Under the plain meaning of the language used, the Hotel Tax is imposed on the `rent' for each `occupancy' of a `guest room.' On its face, parking space rent is not subject to the Hotel Tax. And parking space is not included in the definition of a `guest room,' which is defined as: [¶] `A room occupied, or intended, arranged, or designed for occupation, by one or more occupants.' [¶] Thus, viewing the ordinary meaning of words used in the Hotel Tax Ordinance, viewed in context, hotel parking space rent is not taxable because it is not rent for guest room occupancy.
"Nevertheless, the City argues that the Board of Supervisors expressed the intent to tax the rent for hotel parking space within the definition of the term `occupancy,' which states: [¶] `The use or possession, or the right to the use or possession of any room or apartment in a hotel or the right to the use or possession of the furnishings or to the services and accommodations accompanying the use and possession of the room.' [¶] But in order to conjure the Board's intent to tax hotel parking, the City must ignore the limiting phrase `accompanying the use and possession of the room.'"
(5) Unlike plaintiff, we do not approach the Guidelines with a suspicious anticipation of finding illegality. "An administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate. `[T]he absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority ....' [Citations.] [The administrative agency] is authorized to `"fill up the details"' of the statutory scheme. [Citation.]" (Ford Dealers Assn. v. Department of Motor Vehicles (1982) 32 Cal.3d 347, 362 [185 Cal.Rptr. 453, 650 P.2d 328]; accord, Association of California Ins. Cos. v. Poizner, supra, 180 Cal.App.4th 1029, 1047-1048; Aguiar v. Superior Court, supra, 170 Cal.App.4th 313, 325.) "Moreover, standards for administrative application of a statute need not be expressly set forth; they may be implied by the statutory purpose." (People v. Wright (1982) 30 Cal.3d 705, 713 [180 Cal.Rptr. 196, 639 P.2d 267].) The agency's authority "includes the power to elaborate the meaning of key statutory terms." (Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 800 [85 Cal.Rptr.2d 844, 978 P.2d 2], citing Moore v. California State Bd. of Accountancy (1992) 2 Cal.4th 999, 1013-1014 [9 Cal.Rptr.2d 358, 831 P.2d 798].) Further, because the Guidelines are the equivalent of administrative regulations implementing taxation statutes, they are presumed valid. (E.g., Yamaha Corp. of America v. State Bd. of Equalization, supra, 19 Cal.4th 1, 8-9; Culligan Water Conditioning v. State Bd. of Equalization (1976) 17 Cal.3d 86, 93, fn. 4 [130 Cal.Rptr. 321, 550 P.2d 593]; Parfums-Corday, Inc. v. State Bd. of Equalization (1986) 187 Cal.App.3d 630, 636 [232 Cal.Rptr. 56]; Sternoff v. State Bd. of Equalization (1980) 103 Cal.App.3d 828, 834 [164 Cal.Rptr. 715].)
*172 (6) Although plaintiff would prefer to ignore the Hotel Tax's definition of "occupancy," we cannot, for our duty is to consider the ordinance in its entirety. (E.g., Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218]; State Building & Construction Trades Council of California v. Duncan, supra, 162 Cal.App.4th 289, 310.) (7) To reiterate, that definition is "The use or possession, or the right to the use or possession of any room or apartment in a hotel or the right to the use or possession of the furnishings or to the services and accommodations accompanying the use and possession of the room." (S.F. Bus. & Tax Regs. Code, § 501, subd. (c).) Consider the breadth of the key words: "use," "possession," "services," "accommodations," and "accompanying."
No one, we believe, will disagree with what one Court of Appeal stated one month after World War I ended: "[T]he verb `to use' means to employ; to put to a purpose; to employ for the attainment of some purpose or end; to avail one's self of." (Whitaker v. Regents, etc. (1918) 39 Cal.App. 111, 115 [178 P. 308].) The spirit of this definition appears to have taken firm root. (See, e.g., In re Pritchett (1994) 26 Cal.App.4th 1754, 1757 [33 Cal.Rptr.2d 296] ["`"`"to carry out a purpose...," ... to "apply to advantage..."'"'... `to avail oneself of' and `to employ.'"]; Smith v. Kile (1956) 147 Cal.App.2d 314, 316 [304 P.2d 1034] ["`"use" means that enjoyment of property which consists in its employment, occupation, exercise or practice.'"]; People v. Crosby (1956) 141 Cal.App.2d 172, 176 [296 P.2d 438] ["`To make use of ... to convert to one's service; to avail oneself of; to employ ....'"].)
(8) In California, "possession" can be actual or constructive (People v. Morante (1999) 20 Cal.4th 403, 417 [84 Cal.Rptr.2d 665, 975 P.2d 1071]; Taylor v. Bernheim (1922) 58 Cal.App. 404, 408 [209 P. 55]), temporary (People v. MacArthur (2006) 142 Cal.App.4th 275, 281 [47 Cal.Rptr.3d 736]; People v. Score (1941) 48 Cal.App.2d 495, 497 [120 P.2d 62]), or intermittent (Robertson v. Fleetwood Travel Trailers of California, Inc. (2006) 144 Cal.App.4th 785, 809 [50 Cal.Rptr.3d 731]; McLeod v. Reyes (1935) 4 Cal.App.2d 143, 157 [40 P.2d 839]). Possession generally denotes custody, control, or dominion. (E.g., Fariba v. Dealer Services Corp. (2009) 178 Cal.App.4th 156, 173 [100 Cal.Rptr.3d 219]; People v. Montero (2007) 155 Cal.App.4th 1170, 1177 [66 Cal.Rptr.3d 668].) Possession is often deemed synonymous with "occupancy." (Brown v. Spencer (1912) 163 Cal. 589, 596 [126 P. 493]; Nathan v. Dierssen (1905) 146 Cal. 63, 66 [79 P. 739].)
(9) An "accommodation" is "`whatever supplies a want or affords ease, refreshment, or convenience; anything furnished which is desired or needful.'" (Lambert v. Mandel's of California (1957) 156 Cal.App.2d Supp. 855, 857 [319 P.2d 469].)
*173 Just what qualifies as "services" within the hotel context does not appear to have ever been addressed in a reported California decision. Food and drink would obviously appear to be included, were it not for specific exemptions under state law. (See Rev. & Tax. Code, §§ 7282.3, 32010.) Beyond that, however, "services" would appear to be that vast residuum of amenities offered or made available to guests, limited only by the imaginationor the nerveof hoteliers to charge extra.[3] Use of a barber or hairdresser would likely qualify, as would a spa or gym facilities. So too the provision of business-related needs such as conference rooms, stenographic/copying resources, specialized communication equipment, or Wi-Fi access.[4]
(10) A thing is said to be "accompanying" another thing if the two go along together, or if they occur in association with each other. (U.S. v. Lee (7th Cir. 1942) 131 F.2d 464, 466.) "`No physical attachment ... is necessary. It is the ... relationship that is significant.'" (American Meat Institute v. Leeman (2009) 180 Cal.App.4th 728, 753 [102 Cal.Rptr.3d 759], quoting Kordel v. United States (1948) 335 U.S. 345, 350 [93 L.Ed. 52, 69 S.Ct. 106].)
Using the language of the Hotel Tax's definition of "occupancy," plaintiff contends that "In order to use and possess the room, you must be in the room. In order for a service to accompany your use and possession of the room, it must be related to your use and possession of the room. So when a maid cleans your room, that is a service accompanying your use and possession of the room, regardless of whether you are in the room at the time or not. In the same way, towel and linen service also accompanies your use and possession of the room. Providing an extra bed also accompanies your use and possession of the room, whether that extra bed is used or not." Plaintiff also argues that "Hotels provide many services and accommodations to guests and non-guests alike. Of the services provided only to hotel guests, some of them accompany the use and possession of the room, such as maid service, extra beds, wake-up calls, etc; and some of them do not accompany the use and possession of the room, such as parking, meals, theatre tickets, *174 etc. [¶] ... [¶] Thus the City's interpretation ignores the distinction between services provided to the general public and services provided only to hotel guests."
Plaintiff's emphasis upon confining the City's taxing power to the four walls of a hotel "guest room" is unduly narrow. "Occupancy" of the guest room entails the opportunity to "use" various "services" and "accommodations" offered by the hotel to the occupant of the room. The guest has access to those "services" and "accommodations" by reason of registering at the hotel. The guest's "use" or "possession" of such "services" can thus be said to "accompany" his or her "occupancy" of a hotel room even if such use occurs outside the actual space rented from the hotel. (See American Meat Institute v. Leeman, supra, 180 Cal.App.4th 728, 753.) All of this is implicit in the Hotel Tax's definition of "occupancy." (S.F. Bus. & Tax Regs. Code, § 501, subd. (c).)
Given the myriad of amenities offered at modern hotels-particularly large hotels in a metropolitan setting such as San Francisco-the guest's "use" of "services" and "accommodations" offered by the hotel need not occur with the confines of the actual room rented for occupancy. To cite just one example, laundering and dry cleaning is not done in a guest's room, but not even plaintiff disputes the validity of an additional charge for such services. Here, it is undisputed that plaintiff did rent and occupy a hotel room, and at the same time did avail herself of the parking facilities offered by the same hotel as a concomitant accommodation and service.
(11) We hold that section 6.16-1 is a valid delegation to the Tax Collector. Found within "Common Administrative Provisions" of the City's Business and Tax Regulations Code (S.F. Bus. & Tax Regs. Code, § 6.1-1 et seq.), section 6.16-1 constitutes a grant of authority to the Tax Collector to "`"fill up the details"'" of the Hotel Tax. (Ford Dealers Assn. v. Department of Motor Vehicles, supra, 32 Cal.3d 347, 362.) The Guidelines explain the application of the Hotel Tax by "elaborat[ing] the meaning of key statutory terms" (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th 785, 800), specifically, those in the Hotel Tax's definition of "occupancy."[5] Our independent review leads us to agree with Judge Karnow that the authority of the Tax Collector was not exceeded with the promulgation of the Guidelines.

*175 Plaintiff's Remaining Contentions Are Without Merit
(12) San Francisco also has a "Tax on Occupancy of Parking Space in Parking Stations" (S.F. Bus. & Tax Regs. Code, § 601 et seq.) in the amount of "15 percent for the rent of every occupancy of parking space in a parking station in the City and County." (Id., § 602.) Another provisions states that "`parking station' shall include, but is not limited to: [¶] (1) Any outdoor space or uncovered plot, place, lot, parcel, yard or enclosure, or any portion thereof, where motor vehicles may be parked, stored, housed or kept, for which any charge is made; [¶] (2) Any building or structure, or any portion thereof in which motor vehicles may be parked, stored, housed or kept, for which any charge is made." (Id., § 601, subd. (d).) The tax is not imposed either "On the rent for any occupancy of parking space in parking stations which are a part of residential or hotel premises, provided the occupant of said parking space is a resident or a registered guest of said premises" or "On the rent for any occupancy of parking space by registered hotel guests in parking stations not located on the hotel premises if no charge is made to the registered guest or if such charge is added to the room bill of the registered guest and paid by him to the hotel." (Id., § 606, subds. (2) & (3).) Plaintiff contends that taxing parking space under the Hotel Tax is improper because it conflicts with the intent, expressed in these provisions, to exempt hotel parking.
(13) This issue Judge Karnow nailed. Citing Atlantic Coast Line v. Phillips (1947) 332 U.S. 168 [91 L.Ed. 1977, 67 S.Ct. 1584], he noted that "an exemption under one provision does not carry over to other provisions." This is an accepted application of the principle that exemptions from taxation are strictly construed. (E.g., Cypress Lawn C. Assn. v. San Francisco (1931) 211 Cal. 387, 390-391 [295 P. 813]; Alpha Therapeutic Corp. v. Franchise Tax Bd. (2000) 84 Cal.App.4th 1, 5 [100 Cal.Rptr.2d 548]; Institute in Basic Youth Conflicts, Inc. v. State Bd. of Equalization (1985) 166 Cal.App.3d 1093, 1107 [213 Cal.Rptr. 98]; 16 McQuillin, The Law of Municipal Corporations (3d rev. ed. 2003) § 44.67, p. 302; 3 Singer & Singer, Statutes and Statutory Construction (7th ed. 2008) § 63.8.)
(14) Plaintiff contends that the Hotel Tax as interpreted by the Guidelines is invalid because it was not submitted to the electorate for approval as required by articles XIII C and XIII D of the California Constitution, commonly known as Proposition 218. This contention was not made below, which ordinarily bars it from being considered for the first time on appeal. (E.g., Burden v. Snowden (1992) 2 Cal.4th 556, 570 [7 Cal.Rptr.2d 531, 828 P.2d 672]; Bookout v. Nielsen (2007) 155 Cal.App.4th 1131, 1141-1142 [67 Cal.Rptr.3d 2]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 400, p. 458.) Although we have the discretion to relax this rule to consider a pure *176 issue of law (e.g., People v. Burgener (2003) 29 Cal.4th 833, 860-861, fn. 3 [129 Cal.Rptr.2d 747, 62 P.3d 1]; Adams v. Murakami (1991) 54 Cal.3d 105, 115, fn. 5 [284 Cal.Rptr. 318, 813 P.2d 1348]), we decline to do so here. Had plaintiff included this issue in the allegations of her complaint, it could have been addressed by the City as a pure issue of law when it interposed the demurrer that was the subject of the first appeal. Plaintiff's delay is especially conspicuous because the argument she now advances smacks very much of the one this court accepted in City and County of San Francisco v. Flying Dutchman Park, Inc. (2004) 122 Cal.App.4th 74 [18 Cal.Rptr.3d 532], 16 months before she commenced this action. Even the decision upon which she places almost exclusive relianceAB Cellular LA, LLC v. City of Los Angeles (2007) 150 Cal.App.4th 747 [59 Cal.Rptr.3d 295]was in place for 15 months before this case was tried.
Even if the issue had been preserved for appeal, plaintiff would not prevail. Proposition 218 was adopted in November 1996, but the statutory provisions of the Hotel Tax were already in place. (See Batt v. City and County of San Francisco, supra, 155 Cal.App.4th 65, 68, fn. 1.) Plaintiff makes no argument that Proposition 218 is retroactive. Her contention assumes that the Guidelines impermissibly extend the provisions of the Hotel Tax and thus the application of the Guidelines constitutes a new tax. As already shown, this premise is incorrect. (See fn. 5 & accompanying text, ante.)
Plaintiff's final contention is that we should adopt the definition of "occupancy" in the New York City Administrative Code,[6] which has been administratively construed not to include parking. Absent a showing that San Francisco's Hotel Tax is modeled on New York's, there is no reason the former should not be construed according to its own terms, as we have done. (See No Oil, Inc. v. City of Los Angeles (1974) 13 Cal.3d 68, 86, fn. 21 [118 Cal.Rptr. 34, 529 P.2d 66] ["Since the California act was modeled on the federal statute, judicial and administrative interpretation of the latter enactment is persuasive authority in interpreting the California act."]; Erlich v. Municipal Court (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334] ["This statute, having been patterned on a similar New York statute, should be given, insofar as the language is the same, the same construction ...."]; Holmes v. McColgan (1941) 17 Cal.2d 426, 430 [110 P.2d 428] [principle applied to taxing statute].)

*177 DISPOSITION
The judgment is affirmed.
Haerle, Acting, P. J., and Lambden, J., concurred.
NOTES
[1] Neither of the parties disputes that the principles governing state statutes and regulations are equally applicable to municipal ordinances and their subsidiary or implementing efforts, which in this case means the City's Guidelines. (E.g., Russ Bldg. Partnership v. City and County of San Francisco (1988) 44 Cal.3d 839, 847, fn. 8 [244 Cal.Rptr. 682, 750 P.2d 324]; Birkenfeld v. City of Berkeley (1976) 17 Cal.3d 129, 167-168 [130 Cal.Rptr. 465, 550 P.2d 1001]; Ganey v. Doran (1987) 191 Cal.App.3d 901, 908 [236 Cal.Rptr. 787].)
[2] It should be noted that this was pretty much the approach adopted by Judge Karnow, who addressed numerous issues plaintiff declined to pursue on this appeal.
[3] Although obviously no longer literally credible, the mindset of the 19th century provincial innkeeper sketched by Victor Hugo nevertheless retains some resonance to the modern sensibility: "`The duty of the innkeeper ... is to sell to the first comer, food, rest, light, fire, dirty linen, servants, fleas, and smiles; to stop travellers, empty small purses, and honestly lighten large ones; to receive families who are travelling with respect: scrape the man, pluck the woman, and pick the child; to charge for the open window, the closed window, the chimney corner, the sofa, the chair, the stool, the bench, the feather bed, the mattress, and the straw bed; to know how much the mirror is worn, and to tax that; and ... to make the traveller pay for everything, even to the flies that his dog eats!'" (Hugo, Les Miserables (Modern Library ed. 1992) p. 332.)
[4] It is understood that we are not expressing an actual opinion on the inclusion or exclusion of any item except parking.
[5] In one sense, the Guidelines are not truly relevant because the taxing power of the Hotel Tax is clearly sufficient to cover ancillary charges accruing by reason of a renter's "occupancy," which is largely delineated by the Hotel Tax itself. In this additional sense, the Guidelines did not impermissibly enlarge the scope of the Hotel Tax. (See California Assn. of Psychology Providers v. Rank, supra, 51 Cal.3d 1, 11.)
[6] Which defines "occupancy" as "The use or possession, or the right to the use or possession of any room or rooms in a hotel, or the right to the use or possession of the furnishings or to the services and accommodations accompanying the use and possession of the room or rooms." (N.Y. City Admin. Code, § 11-2501.)