Filed 3/9/18

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GMRI, INC.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>CALIFORNIA DEPARTMENT OF TAX<br>AND FEE ADMINISTRATION,<br><br>      Defendant and Respondent. | C081471<br><br>(Super. Ct. No.<br>34201300145890CUMCGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge.  Affirmed.

MORRISON & FOERSTER, Yonatan E. Braude, Craig B. Fields and Nicole L. Johnson for Plaintiff and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Diane S. Shaw, Assistant Attorney General, Molly K. Mosley and Debbie J. Vorous, Deputy Attorneys General, for Defendant and Respondent.

GMRI, Inc. (GMRI or the Company), a restaurant operator, appeals from a judgment entered in favor of the State Board of Equalization (the Board) after the

trial court granted the Board's summary judgment motion.[1]  The trial court concluded a 15 or 18 percent gratuity restaurant managers automatically added to parties of eight or more without first conferring with the customer (large party gratuity) amounted to a "mandatory payment designated as a tip, gratuity, or service charge" under California Code of Regulations, title 18, section 1603, subdivision (g),[2] and therefore part of the Company's taxable gross receipts, in one circumstance: where the large party gratuity was added and neither removed nor modified by the customer.  We affirm.

BACKGROUND

The facts are stipulated.  Between January 1, 2002 and December 31, 2004, the time period relevant to the tax dispute in this case (period in dispute), GMRI operated Olive Garden and Red Lobster restaurants in California.  Customers of these restaurants were notified on their menus that an "optional" gratuity of either 15 or 18 percent (depending on which restaurant and time period within the period in dispute) "will be added to parties of 8 or more."[3]  While not always added to parties of 8 or more, the

---

[1]  The Taxpayer Transparency and Fairness Act of 2017, which took effect July 1, 2017, restructured the State Board of Equalization and established the California Department of Tax and Fee Administration, transferring most powers and duties of the Board to the newly established department.  (See Gov. Code, § 15570.22; Stats. 2017, ch. 16, § 5.)  We granted a motion to substitute that department as the defendant and respondent in this matter.  However, because the relevant entity was the State Board of Equalization throughout this litigation, we continue to refer to it by that designation in our recitation of the background facts and during the discussion portion of the opinion when referring to actions taken by that entity prior to the restructuring.

[2]  We refer to section 1603, subdivision (g) of title 18 of the California Code of Regulations as "Regulation 1603(g)."

[3]  At all times during the period in dispute, the large party gratuity at Red Lobster restaurants was 15 percent.  For Olive Garden restaurants, it was also 15 percent between January 1, 2002 and February 3, 2003.  Between February 4, 2003 and March 31, 2003, the large party gratuity increased to 18 percent at some Olive Garden locations.  And

2

large party gratuity was added nearly 98 percent of the time. When it was added, a manager was required to swipe his or her manager's card through the restaurant's point-of-sale (POS) system and then manually add the gratuity to the bill. The bill generated and presented to the customer would then contain the total cost of the meal, the applicable tax, the amount of the large party gratuity added by the manager, and the sum of these amounts as the total amount to be paid. In line with the word "optional," the Company's policy was that its restaurant managers would always remove a large party gratuity if asked by the customer to do so. However, unless such a request was made, the large party gratuity would remain on the bill as a portion of the total amount. And where that customer paid with a credit card, the credit card slip would contain the amount of the meal plus tax, the amount of the large party gratuity, the total amount, and then a blank line designated, "Add'l Tip," followed by another blank line designated, "Final Total."

There is no dispute that all gratuities, including large party gratuities, were paid by the Company to the individual servers who provided service to the tables. None of these gratuities were comingled with the operating cash of any of the restaurants.

In 2007, the Board audited GMRI's restaurants for the period in dispute and assessed sales tax on the large party gratuities, determining these gratuities amounted to a "mandatory payment designated as a tip, gratuity, or service charge" under regulation 1603(g). Because the auditors had difficulty reading the ink on the credit card receipts from the period in dispute, the Company and the Board agreed to use a one-week period in 2007 (test period) as representative of the period in dispute and randomly selected 10 Red Lobster locations and 14 Olive Garden locations for which the auditors reviewed the credit card receipts generated during the test period that included the large party

between April 1, 2003 and December 31, 2004, it was 18 percent at all Olive Garden locations.

3

gratuity. The auditors concluded two categories of receipts were subject to taxation: (1) where the customer paid the large party gratuity and did not include an additional tip; and (2) where the customer paid the large party gratuity and did include an additional tip, although no sales tax was owed with respect to that additional tip. Thereafter, the Board issued notices of determination to "GMRI dba Olive Garden" and "GMRI dba Red Lobster" for the period in dispute. The Company filed timely petitions for redetermination.

A hearing on the petitions for redetermination was held in 2011. After the hearing, the Board concluded the large party gratuities were taxable where the 15 or 18 percent gratuity specified in the menu was added to the bill and that amount was paid by the customer, but not when the amount of the gratuity was altered by the customer either upward or downward.

In February 2012, the Board issued notices of redetermination to GMRI in line with the foregoing conclusion. After paying in full the amounts set forth in these notices, the Company made timely claims for refund. The claims set forth the following grounds for refund: (1) the large party gratuity is not a "mandatory gratuity" under regulation 1603(g) because the Company presented documentary evidence rebutting the regulation's presumption "that an amount added as a tip by the retailer to the bill or invoice presented to the customer is mandatory"; (2) the large party gratuity is "optional" within the common understanding of that word as used in the regulation; (3) the large party gratuity is not part of the Company's "gross receipts" under Revenue and Taxation Code[4] section 6012; and (4) if the large party gratuity is a "mandatory payment" under regulation 1603(g), the regulation must be invalidated because it is in conflict with section 6012. The following month, the Board denied the refund claims.

---

[4]     Undesignated statutory references are to the Revenue and Taxation Code.

4

In 2013, GMRI filed its complaint for refund in the trial court, raising the same grounds for refund as asserted before the Board.  In 2015, the parties filed competing motions for summary judgment, agreed upon a joint stipulation of facts, and each party argued the stipulated facts entitled it to judgment as a matter of law.  The trial court ruled in favor of the Board.  This appeal followed.

DISCUSSION

I

*Summary Judgment Principles*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'  [Citations.]"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

II

*The Large Party Gratuity Is a "Mandatory Payment" under Regulation 1603(g)*

GMRI contends the trial court should have granted its motion for summary judgment instead of that filed by the Board because, as a matter of law, the large party gratuity is an "optional payment" under regulation 1603(g) and therefore not subject to the sales tax.  We disagree.

"The sales tax is imposed on retailers '[f]or the privilege of selling tangible personal property at retail.' (§ 6051.) The *retailer* is the taxpayer, *not* the consumer. 'The tax relationship is between the retailer only and the state; and is a direct obligation of the former.' [Citations.]" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1104.) "The central principle of the sales tax is that retail sellers are subject to a tax on their 'gross receipts' derived from retail 'sale' of tangible personal property. (§ 6051.) Despite the apparent simplicity of a tax based on gross receipts, a complex system of statutes and regulations minutely controls tax liability. This system closely defines taxable sales, governs whether particular sales or transactions are subject to the tax, and defines what constitutes 'gross receipts.' " (*Ibid.*)

As relevant here, a "sale" includes the "furnishing, preparing, or serving for a consideration of food, meals, or drinks." (§ 6006, subd. (d).) "Gross receipts" means the total amount of the sale price, including "[a]ny services that are a part of the sale." (§ 6012.)

"The Board administers and enforces the sales tax law (§§ 7051-7060), and adopts related regulations." (*Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1107.) "The regulation defining the taxability of food products is of amazing complexity." (*Id.* at p. 1106.) We are concerned with the proper interpretation of subdivision (g) of that regulation, defining the taxability of tips, gratuities, and service charges added to "transactions occurring prior to January 1, 2015" at "restaurants, hotels, caterers, boarding houses, soda fountains, drive-ins, and similar establishments."

Regulation 1603(g) provides:

"An *optional* payment designated as a tip, gratuity, or service charge is not subject to tax. A *mandatory* payment designated as a tip, gratuity, or service charge *is included in taxable gross receipts*, even if the amount is subsequently paid by the retailer to employees.

"(1) Optional Payment.

"(A) A payment of a tip, gratuity, or service charge is optional if *the customer* adds the amount to the bill presented by the retailer, or otherwise leaves a separate amount in payment over and above the actual amount due the retailer for the sale of meals, food, and drinks that include services. The following examples illustrate transactions where a payment of a tip, gratuity or service charge is optional and not included in taxable gross receipts. This is true regardless of printed statements on menus, brochures, advertisements or other materials notifying customers that tips, gratuities, or service charges will or may be added by the retailer to the prices of meals, food, or drinks:

"Example 1. The restaurant check is presented to the customer with the 'tip' area blank so the customer may voluntarily write in an amount, or

"Example 2. The restaurant check is presented to the customer with options computed by the retailer and presented to the customer as tip suggestions. The 'tip' area is blank so the customer may voluntarily write in an amount:

"[**5**]

---

**5** The following was then provided as an example:

*Guest Check*

| | |
|---|---|
| Food Item A | $9.95 |
| Beverage Item B | 3.75 |
| Subtotal | $13.70 |
| 8% sales tax | 1.10 |
| Subtotal | $14.80 |
| Tip* | |
| Total | |

*Suggested tips:

15%=$2.06; 18%=$2.47; 20%=$2.74; other.

"If an employer misappropriates these payments for these charges, as discussed in subdivision (g)(1)(B) below, such payments are included in the retailer's taxable gross receipts.

"(B) No employer shall collect, take, or receive any gratuity or a part thereof, paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of such gratuity, or require an employee to credit the amount, or any part thereof, of such gratuity against and as a part of the wages due the employee from the employer. (Labor Code section 351.) If this prohibition is violated, any amount of such gratuities received by the employer will be considered a part of the gross receipts of the employer and subject to the tax.

"(2) Mandatory Payment.

"(A) An amount negotiated between the retailer and the customer in advance of a meal, food, or drinks, or an event that includes a meal, food, or drinks is mandatory.

"(B) *When the menu, brochures, advertisements or other printed materials contain statements that notify customers that tips, gratuities, or service charges will or may be added, an amount automatically added by the retailer to the bill or invoice presented to and paid by the customer is a mandatory charge and subject to tax.* These amounts are considered negotiated in advance as specified in subdivision (g)(2)(A). Examples of printed statements include:

" 'An 18% gratuity [or service charge] will be added to parties of 8 or more.'

" 'Suggested gratuity 15%,' itemized on the invoice or bill by the restaurant, hotel, caterer, boarding house, soda fountain, drive-in or similar establishment.

" '*A 15% voluntary gratuity will be added for parties of 8 or more*.'

"An amount will be considered 'automatically added' when *the retailer* adds the tip to the bill *without first conferring with the customer* after service of the meal and receiving approval to add the tip or *without providing the customer with the option to write in the tip*. Nonetheless, *any amount added by the retailer is presumed to be*

8

*mandatory*.  This presumption may be overcome as discussed in subdivision (g)(2)(C) below.

"(C) It is presumed that an amount added as a tip by the retailer to the bill or invoice presented to the customer is mandatory.  *A statement on the bill or invoice that the amount added by the retailer is a 'suggested tip,' 'optional gratuity,' or that 'the amount may be increased, decreased, or removed' by the customer does not change the mandatory nature of the charge*.

"This presumption may be controverted by *documentary evidence* showing that *the customer specifically requested and authorized* the gratuity be added to the amount billed.

"Examples of documentary evidence that may be used to overcome the presumption include:

"1.  A guest check that is presented to the customer showing sales tax reimbursement and the amount upon which it was computed, without tip or with the 'tip' area blank and a separate document, such as a credit card receipt, to which the retailer adds or prints the requested tip.

"2.  Guests receipts and payments showing that the percentage of tips paid by large groups varies from the percentage stated on the menu, brochure, advertisement or other printed materials.

"3.  A retailer's written policy stating that its employees shall receive confirmation from a customer before adding a tip together with additional verifiable evidence that the policy has been enforced.  The policy is not in itself sufficient documentation to establish that the customer requested and authorized that a gratuity be added to the amount billed without such additional verifiable evidence.

"The retailer must retain the guest checks and any additional separate documents to show that the payment is optional.  The retailer is also required to maintain other

records in accordance with the requirements of Regulation 1698, *Records*." (Regulation 1603(g), italics added.)

GMRI argues the large party gratuity at issue in this case is an "optional payment" under this regulation, and therefore "not subject to tax because it is left by the customer as 'a separate amount in payment over and above the actual amount due [GMRI] for the sale of meals, food, and drinks that includes services.' " Not so. As the italicized portions of the regulation make abundantly clear, the large party gratuity is a "mandatory payment" under the regulation. Indeed, the menus at the restaurants in question specifically stated that an "optional [either 15 or 18 percent] gratuity will be added to parties of 8 or more." This statement is indistinguishable from the example provided in the regulation: " 'A 15% voluntary gratuity will be added for parties of 8 or more.' " (Regulation 1603(g)(2)(B).) Thus, under the regulation, "an amount automatically added by the retailer to the bill or invoice presented to and paid by the customer is a mandatory charge and subject to tax." (*Ibid.*) Further, under the regulation, "[a]n amount will be considered 'automatically added' when the retailer adds the tip to the bill without first conferring with the customer after service of the meal and receiving approval to add the tip or without providing the customer with the option to write in the tip." (*Ibid.*) Here, there is no dispute that when the large party gratuity was added to a customer's bill, the restaurant manager added the gratuity to the bill without first conferring with the customer and receiving that customer's approval to add the tip. Nor was the customer provided the option of writing in the tip on the bill. The amount of the large party gratuity was simply printed on the bill as part of the total amount owed for the meal and services provided. Accordingly, where that "automatically added" amount was also "paid by the customer," it amounts to "a mandatory charge" under the regulation and therefore "subject to tax." (*Ibid.*)

Moreover, under the regulation, "any amount added by the retailer is presumed to be mandatory." (*Ibid.*) This is so regardless of the fact that the menu states the gratuity

is "optional," and regardless of the fact the amount may actually be removed, increased, or decreased by the customer upon request. Indeed, this would be the case under the regulation even if the bill itself notified the customer of these things. (*Id*., (g)(2)(C).) The only way to controvert the presumption under the regulation is "by documentary evidence showing that the customer specifically requested and authorized the gratuity be added to the amount billed." (*Ibid*.)

GMRI argues on appeal that it sufficiently rebutted this presumption because its credit card receipts from the test period revealed (1) of the 1,191 credit card receipts from parties of 8 or more, 26 did not include the large party gratuity, (2) of the 1,165 receipts that did include the large party gratuity, 280 included an additional tip, and (3) on two occasions, the large party gratuity was not paid. Thus, the Company argues: "For customers paying by credit card, the amount of the Large Party Gratuity was adjusted from the menu amount over 25% of the time." While this evidence certainly establishes payment of the large party gratuity was "optional" in the sense that a customer was not obligated to pay it, and also had the option of adding to it, this is not how the regulation defines the term. Under the regulation, "a tip, gratuity, or service charge is optional if *the customer* adds the amount to the bill presented by the retailer, or otherwise leaves a separate amount in payment over and above the actual amount due the retailer for the sale of meals, food, and drinks that include services." (*Id*., (g)(1)(A), italics added.) Here, it is undisputed that the restaurant manager, *not the customer*, added the large party gratuities to the bills. And the Board, following the hearing on GMRI's petitions for redetermination, concluded such gratuities were taxable only where the 15 or 18 percent gratuity specified in the menu was added to the bill and *that amount*, no more and no less, was paid by the customer. It is therefore immaterial that the large party gratuity was not always added, and was sometimes altered. In those instances, it was not "mandatory" under the regulation, and the Board so concluded. The question is whether GMRI rebutted the presumption where the large party gratuity specified in the menu was added

11

by the restaurant manager and paid by the customer without alteration. To do this, GMRI needed "documentary evidence showing that the customer specifically requested and authorized the gratuity be added to the amount billed." (*Id*., (g)(2)(C).) None of the evidence cited by the Company establishes customer preapproval of the large party gratuities.

We conclude the large party gratuities at issue in this appeal are "mandatory" under regulation 1603(g) and therefore subject to the sales tax as long as this regulation is valid. We turn to this question now.

## III

### *Validity of Regulation 1603(g)*

GMRI asserts that if the large party gratuities are "mandatory" under regulation 1603(g), as we have concluded, the regulation is invalid because it conflicts with section 6012. Not so.

### A.

### *Standard of Review*

"The Legislature has granted the Board the power to make all rules necessary to administer and enforce the Sales and Use Tax Law. (§ 7051.)" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321 (*Agnew*).) "Because agencies granted such substantive rulemaking power are truly 'making law,' their quasi-legislative rules have the dignity of statutes. When a court assesses the validity of such rules, the scope of its review is narrow. If satisfied that the rule in question lay within the lawmaking authority delegated by the Legislature, and that it is reasonably necessary to implement the purpose of the statute, judicial review is at an end." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10-11.)

"However, an administrative regulation must 'be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law.' (Gov. Code, § 11342.1.) 'Whenever by the express or implied terms of any statute a state

12

agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11342.2.)" (*Agnew*, *supra*, 21 Cal.4th at p. 321.) "Even apart from these statutory limits, it is well established that the rulemaking power of an administrative agency does not permit the agency to exceed the scope of authority conferred on the agency by the Legislature. [Citation.] 'A ministerial officer may not . . . under the guise of a rule or regulation vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute.' [Citation.] And, a regulation which impairs the scope of a statute must be declared void. [Citations.]" (*Ibid.*)

"When a regulation is challenged on the ground that it is not 'reasonably necessary to effectuate the purpose of the statute,' our inquiry is confined to whether the rule is arbitrary, capricious, or without rational basis [citation] and whether substantial evidence supports the agency's determination that the rule is reasonably necessary (Gov. Code, § 11350, subd. (b)(1))." (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.) But where, as here, "an implementing regulation is challenged on the ground that it is 'in conflict with the statute' (Gov. Code, § 11342.2) or does not 'lay within the lawmaking authority delegated by the Legislature' [citation], the issue of statutory construction is a question of law on which a court exercises independent judgment. [Citation.] In determining whether an agency has incorrectly interpreted the statute it purports to implement, a court gives weight to the agency's construction. [Citation.] 'Nevertheless, the proper interpretation of a statute is ultimately the court's responsibility.' [Citation.]" (*Western States*, *supra*, 57 Cal.4th at pp. 415-416.) As we explained in *King v. State Bd. of Equalization* (1972) 22 Cal.App.3d 1006: "The rule

13

giving weight to contemporaneous administrative construction is not evoked when the construction is incorrect." (*Id.* at p. 1012.)

## B.

### *Analysis*

We begin with the relevant statutes. As mentioned, a retail seller is subject to a tax on its "gross receipts" derived from the retail "sale" of tangible personal property. (§ 6051.) For a restaurant operator, this means gross receipts derived from the "furnishing, preparing, or serving for a consideration of food, meals, or drinks." (§ 6006, subd. (d).) "Gross receipts" means the total amount of the sale, including "[a]ny services that are a part of the sale." (§ 6012.) The Legislature did not define the circumstances under which services are considered "part of the sale" (i.e., part of the furnishing, preparing, or serving for consideration of food, meals, or drinks) within the meaning of section 6012. Regulation 1603(g) fills the gap.

" 'An administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate. "[T]he absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority. . . ." [Citations.] [The administrative agency] is authorized to " 'fill up the details' " of the statutory scheme. [Citation.]' [Citations.] 'Moreover, standards for administrative application of a statute need not be expressly set forth; they may be implied by a statutory purpose.' [Citation.] The agency's authority 'includes the power to elaborate the meaning of key legislative terms.' [Citation.]" (*Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 171.)

As already set forth in detail, the determination under regulation 1603(g) as to whether or not a "payment designated as a tip, gratuity, or service charge" is "included in taxable gross receipts" (i.e., whether or not the payment for such services is "part of the sale" within the meaning of section 6012), turns on whether the payment is "mandatory" or "optional," as those terms are defined in the regulation. (Regulation 1603(g).) GMRI

14

describes this distinction as "illogical" and notes section 6012 "provides for no such distinction." With respect to GMRI's characterization of regulation 1603(g), we simply note that our function is to inquire into the legality of the regulation, not its wisdom. (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 679.) Turning to the absence of a mandatory/optional distinction in section 6012, we conclude this does not render the regulation invalid. Again, the Legislature did not define the circumstances under which a payment for services is considered "part of the sale" within the meaning of section 6012. This was left to the Board. In so doing, the Board chose to differentiate between payments that are "mandatory" and those that are "optional," not as those terms are commonly understood, but as they are specifically defined in the regulation. Thus, "mandatory payment" under the regulation can be understood to mean "payment for services that are part of the sale" and therefore part of taxable gross receipts. Similarly, "optional payment" can be understood to mean "payment for services that are not part of the sale" and therefore not part of taxable gross receipts.

The definitions of these terms comport with this understanding. A payment for services is *not* part of the sale "if the customer adds the amount to the bill presented by the retailer, or otherwise leaves a separate amount in payment over and above the actual amount due the retailer for the sale of meals, food, and drinks that include services." (Regulation 1603(g)(1)(A).) In such a situation, the total amount of the sale is the amount due on the bill, and any amount the customer adds or leaves as a tip or gratuity over and above that amount is not part of the restaurant's gross receipts for purposes of the sales tax. Conversely, a payment for services *is* part of the sale, and therefore subject to the sales tax, if it is "[a]n amount negotiated between the retailer and the customer in advance of a meal, food, or drinks, or an event that includes a meal, food, or drinks" (*id.*, (g)(2)(A)), or if it is "an amount automatically added by the retailer to the bill or invoice presented to and paid by the customer" and "the menu, brochures, advertisements or other printed materials contain statements that notify customers that tips, gratuities, or

15

service charges will or may be added." (*Id.*, (g)(2)(B).) In these situations, the total amount of the sale includes the payment for services. Whether the customer negotiated such a gratuity upfront or was notified it would or might be added, the bill the customer receives includes that gratuity as part of the total amount due to the restaurant for the meal and services. We conclude the definitions in regulation 1603(g) properly " ' "fill up the details" ' " (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 362) of what it means for a payment for services to be considered "part of the sale" under section 6012. (See also *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 800 ["delegation of legislative authority includes the power to elaborate the meaning of key statutory terms"].)

Nevertheless, GMRI argues the large party gratuity is not "part of the sale" under section 6012 because the Labor Code defines "gratuity" to "include[] any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business *over and above the actual amount due the business for services rendered* for goods, food, drink, or articles sold or served to the patron" (Lab. Code, § 350, subd. (e), italics added), declares such a gratuity is "the sole property of the employee or employees to whom it was paid, given, or left for," and prohibits an employer from receiving any portion of such a gratuity, deducting any amount from wages due an employee on account of the gratuity, or requiring an employee to credit any portion of the gratuity against wages due the employee from the employer (*id.*, § 351). According to the Company, these Labor Code provisions "are instructive in the field of taxation" because the Board made reference to Labor Code section 351 in regulation 1603(g) and provided its violation would render "any amount of such gratuities received by the employer . . . a part of the gross receipts of the employer and subject to the tax." (Regulation 1603(g)(1)(B).) From the undisputed fact that GMRI complies with Labor Code section 351 by giving the large party gratuities to the servers who served the large parties, the Company concludes such a gratuity "is an amount 'over and above the actual

16

amount due' to GMRI for the meals and drinks purchased and is left for the servers ―
not for GMRI."  We are not persuaded.

In *King v. State Bd. of Equalization*, *supra*, 22 Cal.App.3d 1006, we held a section
of the Revenue and Taxation Code, dealing with improvements to real property, found in
the division of that code dealing with property taxation, had no application to the field of
sales taxation.  We explained: "Like many tax statutes, the sales tax law employs
relatively artificial, relatively self-contained, concepts.  If it utilizes popular meaning or
concepts from other fields of law, it does so only by force of its own objectives and
definitions.  It does not define real property or 'improvements' to real property, if only
because it makes little use of these terms.  Its definition of tangible personal property
deals with tangibility, not with distinctions between personalty and realty.  To pursue the
will-o'-the-wisp of definitions, concepts and distinctions from other areas of law ―
where they are shaped by purposes and by social and economic factors unrelated to sales
taxation ― leads to false goals.  The coverage of the sales tax law is shaped by its own
provisions and definitions and, where these are unclear, by applying its own perceived
policies and concepts."  (*Id*. at pp. 1010-1011, fns. omitted.)

Similarly, the Labor Code's definition of "gratuity" is immaterial to the question
of whether or not a particular payment designated as a gratuity is "part of the sale" for
purposes of the sales tax law.  Moreover, the aforequoted italicized line in the Labor
Code's definition, "over and above the actual amount due the business for services
rendered," begs the question that regulation 1603(g) answers for purposes of the sales tax
law, i.e., under what circumstances is a payment for services over and above the amount
due, and therefore not "part of the sale"?  We have already explained the regulation's
answer and our conclusion that it is a valid exercise of delegated legislative authority.
Nor does the fact GMRI complies with the Labor Code by giving the large party
gratuities to the servers, as also required by regulation 1603(g), undermine this
conclusion.  Simply put, the question for sales tax purposes is not who is entitled to the

17

large party gratuity, but rather whether the payment of such a gratuity is "part of the sale" under section 6012. For reasons already expressed, we conclude regulation 1603(g) properly elaborates upon the meaning of that statutory phrase.

Nor are we persuaded by GMRI's reliance on *Anders v. State Bd. of Equalization* (1947) 82 Cal.App.2d 88 (*Anders*) and *Herbert's Laurel-Ventura, Inc. v. Laurel Ventura Holding Corp.* (1943) 58 Cal.App.2d 684 (*Herbert's Laurel-Ventura*). In *Anders*, restaurant operators and their server employees agreed tips received by servers would belong to the employers to the extent of the amount of minimum wages owed to the servers, but would be retained by the servers and credited against the minimum wages owed. (*Anders*, *supra*, 82 Cal.App.2d at p. 91.) We held "the tips received by the [servers], to the extent of the minimum wages provided for by law, . . . became a part of [the employers'] gross receipts for services in connection with their sales of tangible personal property, since it was agreed between [the employers] and [the servers], in effect, that such tips belonged to the employers and would be credited on payments of minimum wages, and that they were actually so credited." (*Id*. at p. 92.) The same result obtains under regulation 1603(g) because the agreement involved in *Anders* is a violation of Labor Code section 351, and the regulation provides where that provision is violated, "any amount of such gratuities received by the employer will be considered a part of the gross receipts of the employer and subject to the tax." (Regulation 1603(g)(1)(B).) Thus, the Board has made the *Anders* situation an exception to the general rule that a tip or gratuity the customer adds to the bill or otherwise leaves for the server over and above the amount due to the restaurant is not part of the restaurant's gross receipts for purposes of the sales tax law. *Anders* says nothing about the situation in which the restaurant automatically adds a large party gratuity to the bill.

In *Herbert's Laurel-Ventura*, *supra*, 58 Cal.App.2d 684, the lessee of a drive-in restaurant, who had a similar arrangement with its servers regarding their crediting tips received from customers against the lessee-employer's obligation to pay them the

minimum wage, was obligated under its lease agreement to pay the lessor certain sums based on a percentage of its "gross receipts," as that term was defined in the agreement. (*Id*. at p. 687.) The Court of Appeal held these tips were not part of the gross receipts under the lease agreement despite the fact they essentially belonged to the lessee-employer to the extent of the amount of minimum wages owed. (*Id*. at pp. 693-694.) This case is inapposite because the lease agreement had a specific definition of "gross receipts" that differed from that of the sales tax law. As *Anders*, *supra*, 82 Cal.App.2d 88, and regulation 1603(g), make clear, such tips would constitute a part of the lessee's gross receipts for purposes of the sales tax law. And, like *Anders*, *Herbert's Laurel-Ventura* says nothing about the situation at issue in this case. "Cases are not authority for propositions not considered." (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 58.)

GMRI also argues that holding the large party gratuities at issue in this case are part of its taxable gross receipts essentially means, as the trial court concluded, such gratuities are a "service cost" because section 6012, subdivision (a) provides in relevant part: " 'Gross receipts' mean the total amount of the sale . . . without any deduction on account of . . . . [¶] . . . [¶] (2) The cost of the materials used, labor or service cost, interest paid, losses, or any other expense." However, argues the Company, "if the Large Party Gratuities were service costs, then all gratuities would be service costs because the Large Party Gratuities are treated no differently from all other gratuities. Consequently, GMRI would be required to add all gratuities to every customer's bill in order to collect the sales tax. If not, then GMRI would be reducing the amount of the sale by a 'service cost' in contravention of Section 6012." This argument misses the point. As previously stated: "The sales tax is imposed on retailers '[f]or the privilege of selling tangible personal property at retail.' (§ 6051.) The *retailer* is the taxpayer, *not* the consumer. 'The tax relationship is between the retailer only and the state; and is a direct obligation of the former.' [Citations.]" (*Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1104.)

"Nevertheless, a retailer may seek sales tax reimbursement from a consumer. 'Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale.' (Civ. Code, § 1656.1, subd. (a).)" (*Bower v. AT & T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1553.) Thus, section 6012 has nothing to do with whether or not GMRI may collect sales tax from its customers without adding all gratuities to its bills upfront. The relevant question is simply whether or not GMRI owes the state sales tax on gratuities that are so added. The answer under section 6012, subdivision (b) is if the gratuity is a payment for "services that are part of the sale," then yes. And, as we have explained, regulation 1603(g) properly elaborates upon the meaning of this statutory phrase.[6]

Finally, GMRI's reliance on *Ontario Community Foundations, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811 is also misplaced. There, our Supreme Court invalidated a regulation it concluded "clearly conflict[ed]" with a provision of the Revenue and Taxation Code. (*Id.* at pp. 821-822.) For reasons already explained in detail, we conclude regulation 1603(g) does not conflict with section 6012. Instead, the regulation is a valid exercise of delegated legislative authority.

## DISPOSITION

The judgment is affirmed. The California Department of Tax and Fee Administration is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

---

[6] We do not specifically address GMRI's additional argument that holding large party gratuities are part of its taxable gross receipts unlawfully discriminates against its customers because this claim was not raised in its claims for refund. As we explained in *Atari, Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665: "The claim for refund delineates and restricts the issues to be considered in a taxpayer's refund action. [Citation.] The trial court and this court are without jurisdiction to consider grounds not set forth in the claim." (*Id.* at p. 672.)

20

_____/s/_____
HOCH, J.

We concur:

_____/s/_____
HULL, Acting P. J.

_____/s/_____
MURRAY, J.